IN ERROR;
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

STEPHEN WILLIAMS, } *Plaintiff in error*,

against

JACKSON, *ex dem.* GEORGE } *Defendant in error.*
TIBBITS AND OTHERS,

THIS cause came before the court, on a writ of error, from the supreme court.   (See 2 *Johns. Rep.* 297.)

*Foot*, for the plaintiff in error.   Admitting that the premises in question are within the *Hosick* patent, I shall contend that the plaintiff below is not entitled to recover.

1. There was an adverse possession at the time *Tibbits* purchased.   A person who purchases land, held adversely, cannot recover possession under his deed. Then can the heirs of *Volkert P. Douw*, who conveyed to *Tibbits*, recover for the benefit of *Tibbits ?*   It may be said, that the conveyance to *Tibbits*, by reason of the adverse possession, was void ; but a person who has executed a deed, is not allowed to allege, that he had no title at the time of the conveyance.   The heirs of *Douw* are in the same situation as *Crabb*, in the case of *Jackson, ex dem. The Loan-Officers of Rensselaer and Crabb*, v. *Bull*, decided in this court.*

It is a settled rule, that a person who has executed a deed, is estopped to say he had no title when he made the deed.†

But it will be said, that the conveyance from *Douw* to *Tibbits*, is void, by the statute " to prevent and punish champerty and maintenance."‡   The eighth section of that act is copied from the statute of 32 *Hen.* VIII. c. 9.§   It prohibits any person from selling lands, unless he has been in possession a year ; but it does not declare the deed void.   It is true, the same statute declares all conveyances made for maintenance void ;¶ but this was

The survey and map of *Hosick* patent, made by *John R. Bleecker*, in *May*, 1754, and the location of lot No. 48. made on the partition of that patent, are correct, and describe the true bounds thereof.
If a person out of possession conveys land, held adversely by another, such conveyance is void ; but the title remains in the grantor so as to enable him to maintain ejectment.   And where, in an action of ejectment, several demises were laid, one from the grantor and another from the grantee of such a deed, it was held, that the plaintiff might recover, though he could not on the demise of the grantee only.
* 1 *Johns. Cases*, 81. 89.
†4 *Com. Dig.* 76. 81. *Estop.* (A.) (D.
‡24 sess. c. 87. s. 8.
§ *Co. Lit.* 369. n;

¶ Sec. 7.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

copied from the statute of *Richard* II. passed more than one hundred years before that of *Henry* VIII. There is not an instance since the time of *Henry* VIII. of an action of ejectment, until the case of *The Loan-Officers of Rensselaer and Crabb* v. *Bull*, by a grantor who had made such a conveyance, on the ground that it was void.

The deed may be void as it regards *Tibbits;* but it operates so far as to extinguish the title of the grantors.

It is true, that in the case of *Jackson, ex dem. Jones and others*, v. *Brinckerhoff*, decided by the supreme court, in *April*, 1802, it was held, that where demises are laid from the 'grantor and grantee, the plaintiff might recover, though he could not on the separate demise of either. This doctrine was started, for the first time, in that case ; and it is an ingenious contrivance to turn a man out of the possession of land. But for whose benefit is the recovery? For *Tibbits*, certainly, who has the right ; and *Douw* and his heirs are estopped from alleging any thing against his title. In this way, a statute, which has been regarded both in *England* and by our own courts, as a beneficial one, will be completely evaded. In *Van Dyck* v. *Van Beuren* and *Vosburgh*,* Chief Justice *Kent* considered the statute against maintenance as salutary, and was of opinion that its provisions were not to be evaded by the cunning and contrivance of the parties. But if *Tibbits* can recover, it is a virtual evasion of the statute ; for, I contend, if the plaintiff is allowed to recover on the demise of *Douw*, it must be for the benefit of *Tibbits*.

2. The premises in question do not lie within the bounds of *Hosick* patent. [Here the counsel went into an examination of the facts in the case ; but his observations cannot be understood without a reference to the map produced.]

* 1 *Johns. Rep.* 345. 362.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

*Van Vechten*, contra. 1. If the doctrine contended for by the counsel for the plaintiff in error is to prevail, a person who is in possession of land without title, may hold it forever. The title to lot number 48. in *Hosick* patent, is admitted to have been in *Douw* and his heirs. If, then, the deed to *Tibbits* is void, the title must remain in the representatives of *Douw*. Either the deed is void, or it is not: if void, then no title passed from the heirs of *Douw*: if valid, then *Tibbits* has the legal title. But it is said that the heirs of *Douw* cannot avail themselves of this objection to the deed. They do not seek to avoid it. It is the plaintiff in error who insists on its being inoperative.

It is said that the deed is void, because the premises were held adversely at the time. It is on the principle of maintenance, that such a conveyance is unlawful ; and the statute provides a penalty, as well as a prohibition. Admitting, even, that *Tibbits* was guilty of maintenance in purchasing the land, while another was in adverse possession, it proves nothing in favour of the plaintiff in error. *Tibbits* may have incurred the penalty of the act ; but there is no provision as to the title, or as to the person in whom it is to vest. Deeds made for maintenance are void ; and it is a gross absurdity to say, that a deed which is void can pass any title. But it is said that it operates as an *estoppel* to *Tibbits*, and as an extinguishment of *Douw's* title. This doctrine of extinguishment is novel, and no authority or *dictum* has been cited to support it. If adopted, it would be attended with unjust and mischievous consequences. In the case of *Fitzherbert* v. *Fitzherbert*,* it was said, that if, after a disseisin, the person on whom the lands had descended in remainder, not knowing of the disseisin, had levied a fine to a stranger, it should come to the benefit of the *conusor*, and not to the use of the *disseisor* ; for, otherwise, a disseisin being secret, may be the cause of disinherison of any one who intends to levy

* *Cro. Car.* 485.

*IN ERROR.*
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

∵ *Patridge v. Strange, Plowd.* 83.
† *Co. Lit.* 214. s. 347.

‡ 1 *Leon.* 167. 10 *Co.* 48. 13 *Vin.* 58. s. 13. 5 *Term Rep.* 643. 646. *Cro. Eliz.* 529. *Hawk.* b. 1. c. 86. s. 14.

§ 10 *Vin.* 422. s. 6. *Co. Lit.* 332. a. 247. b. 265. b. 239. a. 8 *Co.* 53. b.

a fine for his own benefit. The *English* decisions on the statute speak of it, as avoiding the deed.* A mere right of entry on lands cannot be conveyed.† If a conveyance is prohibited and void, how is it possible for any court to declare that it shall operate in favour of a person not named in the deed, or a privy, but a mere stranger. As the statute prescribes the penalty for such a conveyance, it is to be inferred, that nothing further was intended; for otherwise there would be a double penalty; the party would forfeit and pay the value of the land to a common informer, and also lose the title and land itself. In the case of *Jackson, ex dem. Jones and others*, v. *Brinckerhoff*, there was a unanimous decision of the court; and it is a case in point.

At common law, a deed may be void in part, and good in part; but a deed made void by statute, is void *in toto*;‡ for if a deed made void by statute could be good in part, the statute might be easily evaded.

The doctrine of *estoppel* cannot apply; for an act which is a nullity cannot be an *estoppel*. Besides, an *estoppel* must be mutual, and binds only parties and privies.§ In the case of *Jackson, ex dem. The Loan-Officers of Rensselaer*, v. *Bull*, it was decided merely, that where a person sells land, and executes a deed, and afterwards acquires a good title, he cannot avoid the deed, by alleging that he had no title at the time; but his subsequently acquired title shall enure to the benefit of the grantee.

2. The evidence clearly shows, that the premises lie within the patent of *Hosick*, and such is the fact found by the jury.

*Foot*, in reply. It is agreed, that the plaintiff cannot recover on the demise of *Tibbits*; and as to *Douw* and his heirs, I contend that the case of *Jackson, ex dem. The Loan-Officers of Rensselaer and Crabb*, v. *Bull*, is in point. The court said, that *Crabb's* conveyance to *Lansing*

5

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

should operate, and that he should be estopped to say he had no title when he executed it; and in that case *Bull* objected to the deed to *Francisco*, though not a party. I do not say, that the deed is void by statute, but by common law. In the case cited from *Plowden*, *Montague*, Chief Justice, says, the statute was made in affirmance of the common law. It is asked if neither *Douw* nor *Tibbits* can have the land, to whom does it belong? I answer, the tenant in possession, who claims adversely, will hold it. The grantee, or his heirs, cannot enter; nor can the reversioner or his heirs. So that a person in possession of land, may derive a benefit from a conveyance to which he is not a party. It does not follow, that because *Tibbits* cannot have the land, that it must belong to the representatives of *Douw*.

It is true, no case was cited to show that the title of *Douw* and his heirs was extinguished and gone; but can any authority be found to support the doctrine, that a man, after he has executed a deed, conveying all his title, can claim or recover the land, on the ground of that title?

In the case of *Jackson*, *ex dem.* *Jones, and others* v. *Brinckerhoff*, demises were laid from the grantor and grantee, and a double fiction was devised, in order to evade the statute; but I trust this court will not sanction the doctrine of that case.

Any person may take advantage of an *estoppel*, who is interested, or affected by the act. I do not say that a deed, which is a nullity, is an estoppel; but the person making the deed, is estopped to say that it is a nullity.

THE CHANCELLOR. This cause was removed, by writ of error, from the supreme court, in which it was determined unanimously by the judges on a special verdict.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

The errors relied on are four; the first, in the order in which I shall consider them, was assigned in the argument; the other three are stated in the joint case of the parties. They are,

1. That the premises are not in lot No. 48. in the *Hosick* patent.

2. That *George Tibbits* could not, by the conveyance of the heirs of *Volkert P. Douw*, establish a right to recover lands held adversely.

3. That such conveyance was an extinguishment of their rights; and,

4. That the location of lot No. 48. made by *Hazel Shepherd*, in 1784, is conclusive, not only upon the said heirs, but upon all others, who derive their title under them.

As to the first point. The *Hosick* patent was granted in the year 1688: a partition of the lands thereby granted, was made by *John R. Bleecker*, in 1754. No. 48. was one of the lots described in the map and field-book of that division; and the title derived under the *Hosick* patent, to that lot, is found to have been vested in *Volkert P. Douw*, who died in *March,* 1801.

The patent to *William Shepherd* and *Joshua Mercereau*, was dated the 14th day of *August,* 1806, for a tract of land between the *Hosick* patent and *Pittstown.* It is described by courses and distances; one of which courses carries it to the bounds of the patent of *Hosick,* and adds, then along the same, as the needle pointed in the year 1754, north 30 degrees west, 56 chains; south 72 degrees west, 36 chains and 50 links; south 64 degrees west, 211 chains; south 70 degrees west, 153 chains; south 81 degrees west, 164 chains and 50 links, and south 65 degrees west, 70 chains, to the north bounds of a tract of land granted to *David Abrahamse Schuyler.*

These courses are described as running in the direction of the magnetic needle in 1754, the year of *Bleeck-*

IN ERROR.
......
ALBANY,
Feb. 1809.
WILLIAMS
v.
JACKSON.

*er's* division ; and, to put the intent of the boundary lines of that patent beyond all doubt, as affecting the *Hosick* patent, it will be found, by comparing its courses and distances along that patent, that the courses, when inverted, precisely correspond with those on *Bleecker's* map, and the distances in all but two points, which can be satisfactorily accounted for, by their being the points of commencement and termination ; the first distance in *Shepherd's* and *Mercereau's* patent, being in the course of north 30 degrees east, 56 chains ; in the *Hosick* patent 126 chains ; and the last distance in the former patent being in the course of south 65 degrees west, 70 chains ; in the latter 78 chains.

This demonstrates that the bounds of the *Hosick* patent, as located by *John R. Bleecker*, were those intended to be conformed to by the patent of *Shepherd* and *Mercereau;* and that to whomsoever the premises in question belong, they are not covered by that patent.

The plaintiff, however, in the court below, could not found his right of recovery on the weakness of his adversary's title. He must have made out his own title to the premises in question satisfactorily, or he could not be permitted to wrest from the defendant his possession.

In examining the bounds described in the *Hosick* patent, we find the given extent is two miles on each side of the *Hosick* creek. There may be difficulties in locating it precisely by any one general rule of construction. But wherever it is practicable to adopt a rational rule to satisfy its terms, and some windings of the creek, of a peculiar conformation, probably either unknown or unattended to at the time of granting the patent, should oppose its application throughout, no good reason can be assigned, why they should not be admitted as exceptions, and a construction adopted, which, while it makes the whole consistent, may surmount the difficulties arising from such peculiar conformation.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

In this case, it appears to me, the court are relieved from examining or determining upon the construction of the supreme court, as to the bounds of the *Hosick* patent generally. There are facts, disclosed in this cause, which render that unnecessary. The jury have found, that, according to the map and field-book of the partition of the patent of *Hosick*, by *John R. Bleecker*, and the lines actually run by him, the lot, No. 48. includes the premises in question ; and that the outlines, so run by *John R. Bleecker*, are in no part above, and in many parts within two miles of the *Hosick* creek.

The map, having been produced, and used by the counsel in argument, by a species of tacit consent, as referred to in the special verdict, and in some measure identified with it, arguments deduced from mensuration of its lines, and the curves of the *Hosick* creek only appearing from that map, and from no part of the record, I inquired of the counsel of both parties whether there was any agreement on the subject, and they agreed, that it was their intent that it should be considered as forming a part of the facts on which the court were to pronounce the law. If so, every fact deducible from the map is to be considered as found by the jury. For the parties have it in their power, by mutual consent, to depart from the strict rules of law ; their consent taking away all errors.

Without a resort to the map, there is nothing in the special verdict to show, that the direction of the creek was not as straight as the line of No. 48. dividing it from *Shepherd's* and *Mercereau's* patent. The finding of the jury, that the outlines run by *John R. Bleecker*, *are in no part above, and in many parts within two miles of the Hosick river*, and that lot No. 48. according to his survey, included the premises in question, would conclude this point, and fix the premises clearly within No. 48.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

But the map shows the precise curves of the *Hosick* creek, and the location of lot No. 48. and shows that the lines of the lot are not at right angles with the creek, and that those lines, and the lines of the correspondent lot on the north side of the creek, cross it diagonally. Measuring on those lines, the north-east line of lot No. 48. would exceed the two miles above 30 chains, and the south-west line somewhat more, perhaps, than 31 or 32 chains in extent. But the direction of the lines from the creek, which were merely intended to mark the divisions made between the proprietors, can have no influence on the question of the extent of the patent from the *Hosick* creek.

If lines are drawn at right angles, from every part of the *Hosick* creek, affecting lot No. 48. of the extent of two miles, it will be found, that the delineation on the map corresponds with the finding of the jury, that both corners of lot No. 48. would be clearly included within the two miles; that between 15 and 20 chains of the south-east corner is within that distance; and the finding of the jury concludes to the point, that the premises in question are not at the points excluded from the two mile line; for though they do not locate them, they expressly find, that they are comprehended within two miles of the *Hosick* creek.

The limited view of the bounds of the *Hosick* patent, presented in this case, does not afford a ground for a general location of it, nor is it necessary; for whatever may be its construction, lot No. 48. is within two miles from the *Hosick* creek, which is within the description of the patent.

The circumstance adverted to by the supreme court, in the case of *Jackson, ex dem. Quackenboss*, v. *Dennis*,*    * 2 *Caines*, 177. has also great weight, as to this point : the long time elapsed since *Bleecker's* survey, which was in 1754. It does not appear, as to the premises, that it was questioned till since 1785, after a lapse of thirty-one years; and

*IN ERROR.*

ALBANY,
Feb 1809.

WILLIAMS
v.
JACKSON.

* *Co. Lit.* 214.
s. 347.

then not by means of a collision with bounds of grants of equal antiquity with the *Hosick* patent, but with a grant made nearly a century after it.

I am, therefore, of opinion, that the premises in question are not included in the patent to *Shepherd* and *Mercereau*, but that they are in the bounds of No. 48. in the *Hosick* patent.

As to the second point. The maxim of the common law, as laid down by *Coke*, is, that nothing in action, entry, or re-entry, can be granted.* The reason he assigns is, for the avoiding of maintenance, suppression of right and stirring up of suits ; for so, under colour thereof, pretended titles might be granted to great men, whereby right might be trodden down.

It is found, by the verdict, that the defendant had been in actual possession of the premises in question, by virtue of his title, for ten years, before the commencement of the suit, which was on the 1st day of *June*, 1804, and has so continued ever since.

This is finding an adverse possession in him, overreaching the title of *Tibbits*, one of the lessors of the plaintiff, and so clearly within the maxim, in affirmance of which the statute of 32 *Hen.* VIII. c. 9. was passed, with which our statute corresponds ; and on this ground nothing of the premises in possession, passed to *Tibbits*, by the conveyance of the heirs of *Volkert P. Douw.*

As to the third point. From the maxim of *Coke*, it seems, the law merely imposes an incapacity to grant things in action, but no penalty for attempting its violation. The conveyance was void to all intents.

The 9th section of the act of this state, for preventing and punishing champerty and maintenance, contains an inhibition of the bargaining or selling any lands not being in possession of the person making such bargain or sale, or not having taken the rents or profits thereof for one whole year before the making thereof, upon pain of forfeiting the value of such land, and imposes

upon the purchaser, or taker thereof, knowing the same, the like forfeiture.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

A penal statute is to be construed strictly, and no forfeiture superinduced, beyond its positive provisions. The statute being in affirmance of the common law, and expressly providing, that no person shall sell, &c. virtually avoids the conveyance.

In the case of *Fitzherbert* v. *Fitzherbert*,* cited in support of the doctrine contended for by the plaintiff, it appears no opinion was given with respect to the effect of the fine, after the disseisin ; but *Brampton*, C. J. and *Croke*, J. conceived. it would not enure to the benefit of the disseisor. The *dictum* is against the doctrine, and no contradictory case having been shown, it leaves it, in every judicial point of view, where it found it. But a *dictum* of *Croke*, the soundness and weight of whose opinions, generally, have ever been held in high reverence and respect, as well in our courts as in *Westminster Hall*, may well be admitted to guide the judgment, where there are no adjudged cases to oppose it.

* *Cro. Car.* 483.

If this point can be sustained, then the statute works a forfeiture, not only beyond its strict, but beyond its expressed provision, as it subjects the vendor to the forfeiture of the *value* of the land, and the land itself.

If such was the doctrine in *England*, it must lose some of its force here, from the great difference in the situation between the landed estate in that country and this. There every acre is actually possessed by, or under the eye of its owner or his agent. Here, as long as land remains uncultivated, and sometimes long after its cultivation, the owner is frequently remote from, and inattentive to, his real estate. Covered with forests, the precise boundaries unknown, a man may occupy for many years, without its being discovered that he has encroached on lands, the indisputable title of which is held by others. The vendor, by the words of the statute, cannot repel the effect of the rigorous rule con-

*IN ERROR.*
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

tended for.  The purchaser may traverse the *scienter;* but the vendor is supposed to know the situation of the land he undertakes to sell.

It has been said, that the supreme court of this state have countenanced the doctrine.  Should that be the case, I think it requires the decision of this court to discountenance it.  but an examination of the cases which have been cited, will enable the court to determine how far the opinions of the supreme court warrant the assertion.

The first case cited, in order of time, is that of *Jackson, ex dem. Jones and others,* v. *Brinckerhoff.** But in that case the whole court concurred in opinion, that a conveyance of land, by a person against whom it was adversely held, at the time of making it, was void ; but that the grantor was not devested of his original right by such conveyance.

*\* Ch. Just. MS. April term,1802.*

The case of *Jackson, ex dem. Youngs and others,* v. *Vredenburgh,*† does not touch the point here.  The adverse possession was only considered material, as it respected the statute of limitations.

*† 1 Johns. Rep. 159. May term, 1806.*

In the case of *Van Dyck, qui tam,* v. *Van Buren and Vosburgh,*‡ Mr. Justice *Thompson,* in giving his opinion, in which Mr. Justice *Tompkins* concurred, lays it down, that if *A.* convey to *B.* by metes and bounds, 200 acres, and on a survey, it should be ascertained, that 10 acres are held adversely by *D.* that the judgment of law would pronounce the deed inoperative as to the land held adversely, and good as to the residue.§ The chief justice added, as the statute cannot be eluded, by fraudulently associating a pretended title to one farm, with a valid title to another ; as the statute has only added to the common law offence, the penalty of forfeiture of the value of the land sold under the pretended title, it may, perhaps, be, that the deed is left to its operation as at common law, by which it would be good as to the one, and void as to the other ; the judges thus differing some-

*‡ 1 Johns. Rep. 346. Aug. term, 1806.*

*§ 13 Vin. 48. 11 Co. 26.  Pigot's Cases.*

what, in their mode of expression, but all uniting in considering a deed for a pretended title as void.

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

The case of *Jackson, ex dem. The Loan-Officers of Rensselaer and Crabb* v. *Bull,** was decided while I was in the supreme court, on the doctrines of relation and estoppel, and has no analogy to this point.

These decisions, as far as their principles can apply to this case, are, in my opinion, correct; none of them go beyond the extent of avoiding the deed conveying a pretended title ; and in the case of *Jackson, ex dem. Jones*, v. *Brinckerhoff*, the court decided on the precise point presented here.

To give the statute a construction, which, on one hand, avoided the deed, and, on the other, gave it legal operation, for the benefit of the person holding adversely, would be incongruous and contradictory ; and its being a nullity, is a satisfactory refutation of the position, that it might operate as an *estoppel.* Another reason would be equally conclusive, if the deed operated, that the plaintiff in error was neither party nor privy to it, and none but parties or privies can avail themselves of an *estoppel.*

As to the fourth point. The location of lot No. 48. by *Hazel Shepherd.*

The special verdict states, that in the year 1784, *one of the tenants of Volkert P. Douw*, who was then owner of lot No. 48. employed one *Hazel Shepherd* to run out and subdivide the lot No. 48. and that *Hazel Shepherd* did, accordingly, subdivide the said lot into several small lots, and did mark the lines of the subdivisions ; but that, in making such survey and subdivision, the said *Hazel Shepherd* pursued the dictates of his own judgment, without any knowledge of the original partition lines of the patent of *Hosick*, and, without any instructions from *Volkert P. Douw*, and that the mode of location adopted by the said *Hazel*

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

*Shepherd*, was by traversing the *Hosick* river, the breadth of lot No. 48. and by running out, from a central point, the distance of such traverse from the said river ; and that he made a map of the said survey and subdivision, and that *Volkert P. Douw* paid him for the same, but that *Hazel Shepherd* gave no explanation to *Douw*, either of the manner of his making the said survey, or the mode of locating which he had adopted.

It then goes on to state, that, according to the location, the premises in question are not included in lot No. 48. that *Volkert P. Douw* executed a lease for lot No. 13. of the said subdivision, on the 26th *January*, 1785, and that, in the said lease, the said lot No. 13. is bounded south by the south line of the original lot No. 48.

It is an established rule, in determining on special verdicts, that the court cannot legally deduce any fact, not derived from other facts appearing in it. Thus, though a demand and refusal, in an action of trover, are evidence of a conversion, the court cannot, upon the finding of those facts, infer a conversion.

In this case the verdict states, that *one of the tenants* of *Volkert P. Douw*, the then owner of lot No. 48. employed *Shepherd* to survey ; but it does not state whether the relation of landlord and tenant arose from lot No. 48. or other lands of *Volkert P. Douw*. It further states, that he had no knowledge, nor had *Hazel Shepherd* any instructions from him on the subject. That *Hazel Shepherd* made a map of his survey, and that *Volkert P. Douw* paid him for it, though he received no explanation of the mode of locating the lot, adopted by *Shepherd*.

The privity subsisting between landlord and tenant, will not authorize the tenant to have surveys made of the lands he holds from him, so as to bind the interest of the landlord. But if the survey is of land not in

IN ERROR.
......
ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

his tenure, it is an interference without even a pretence of right. The land he held as tenant might have been in another town or another county, and there is nothing in the verdict to attach it to the land in question.

The survey was made without the knowledge of *Volkert P. Douw*. He gave no instructions, nor received any explanation respecting it. It is not even found, that the map was delivered to him. The only act of *Volkert P. Douw*, which can be construed as even an acquiescence, is the paying for the map, and adverting to one of the lots in the subdivision, in a lease subsequently given by him.

If he had even received the map, as well as paid for it, neither of these could be fairly construed as affirming it. It might have been brought to him for the express purpose of describing No. 13.

The verdict, however, finds, that the only act of *Volkert P. Douw*, respecting the location, besides the payment, is at variance with *Shepherd's* survey; for instead of bounding No. 13. in the subdivision of No. 48. on *Shepherd's* line, he expressly bounds it on the south, which is the line dividing No. 48. from *Shepherd's* and *Mercereau's* patent, in the original line. There is, therefore, not the least ground apparent from the verdict, from which it can be inferred that *Volkert P. Douw* was concluded by that survey; and if he was not, his heirs could not be.

The declaration in ejectment has several demises, one of which is on the demise of *Tibbits*, another on the demise of the heirs of *Douw*; the titles from both are deduced to the nominal plaintiff, *James Jackson*; so so that if a title is made out on either demise, his right of recovery can be sustained.

Being of opinion, for the reasons I have detailed, that the plaintiff is entitled to recover on the demise of the heirs, I am for affirming the judgment.

IN ERROR.
......
ALBANY,
Feb 1809.

WILLIAMS
v.
JACKSON.

CLINTON, Senator. The special verdict recites, at large, the facts. In 1807, the opinion of the supreme court was given in the cause, from which a writ of error has been brought. From the report of the case, (2 *Johns. Rep.* 297.) it appears, that there was but one question in the court below, which was upon the true construction of the south line of the *Hosick* patent. It seems now, that another question has been started, and our attention is called to two points :

1. Whether, as the conveyance made to *Tibbits* was made when there was an adverse possession, it could transmit any title to him ; and whether it did not extinguish the title of the other lessors of the plaintiff.

2. Whether the line run by *Shepherd*, in 1784, is not conclusive against the heirs of *Douw*, and those holding under him.

As to the first point, I am clearly of opinion, that the decision of the supreme court, given in *April* term, 1802, in the case of *Jackson, ex dem. Jones and others*, v. *Brinckerhoff*, is valid and incontrovertible, flowing from the clearest principles of law, and fortified by the soundest dictates of policy. This judgment has been recognised in the case of *Jackson, ex dem. Youngs and others*, v. *Vredenbergh*, (1 *Johns. Rep.* 163.) and has never, that I know of, been called in question until now. And although not binding on this court, yet it is, under these circumstances, entitled to peculiar weight ; and it is time the question should be definitively settled.

An important point to adjust is, whether the conveyance of *Tibbits* was void or voidable. A thing is void which is done against law, at the time of doing it, and no person is bound by such acts. A bond given for a purpose *malum in se*, or for performance of a *malum prohibitum*, as maintenance, is absolutely void. The conveyance of real property, when there is an adverse possession, is void at the common law, as constituting the offence of maintenance.

IN ERROR.

ALBANY,
Feb. 1809.

WILLIAMS
v.
JACKSON.

The statute against maintenance also prohibits such grants, and subjects the seller and buyer to penalties equal to the value of the lands; one moiety to enure to the informer, and the other to the state. There can be no doubt, then, but that the act, being void, no right could be transmitted from the grantor, or pass to the grantee. Nor can the heirs of *Douw* be concluded by an act which the law declares a nullity.

As to the assertion, that this grant operates as an extinguishment of the title, I consider it as a mere *dictum*, and entirely groundless. The offence of maintenance was punishable, at common law, by fine and imprisonment. By statute, in this case, a penalty, equal to the value of the lands, is incurred. Another punishment is now contended for; a forfeiture of the land itself; a doctrine totally unsupported by law, and which would produce the most mischievous consequences. It would encourage intrusion upon property, clog and embarrass alienations of real estate, and open a wide door to fraud and injustice.

As to the second point; whether the line run by *Shepherd*, in 1784, is not conclusive against the heirs of *Douw*, and those claiming under him.

In 1754 a surveyor, named *John R. Bleecker*, made a regular partition of the patent of *Hosick*, of which lot No. 48. forms a part. This patent is described as lying on both sides of *Hosick* creek, being in breadth on each side of the said creek, two *English* miles, that is to say, two *English* miles on one side of the said creek, and two *English* miles on the other side of the said creek. In *November*, 1803, the supreme court (2 *Caines*, 177.) recognised and established the survey of *Bleecker*. The mode he adopted, was to run the outlines, so as to be enabled, at any point of them, to strike the creek at two miles distance, in some one direction, though he might be nearer to, or further from it, than two miles in other directions; and this the court

*IN ERROR.*

.......

ALBANY,
Feb. 1809.

WILLIAMS
*v.*
JACKSON.

considered as much more practicable, and better calculated than any other to satisfy the words of the patent. The mode adopted by *Hazel Shepherd*, in 1784, was, by taking a traverse of the creek, the breadth of lot No. 48. and by running out, from a central point of such traverse, the distance of two miles from the said creek.

The difficulty in this mode is, that in some instances, the outlines of the patent would, in many points, be nearer to, and in others more distant than two miles from the creek ; which would be contrary to the words of the grant.

The mode now adopted by the state is variant from either of them, and considered as the only practicable one, in cases like the present. It is to run the bounds so that every point in them shall be exactly the given distance from the point nearest to it in the creek, or river. In this manner the reservation on each side of *Fish* creek has been run ; also the reservation of one mile along the east side of the *Niagara* river. It is obvious, that neither *Bleecker's*, nor *Shepherd's* mode of making the survey corresponds with this. According to the map and field-book of the partition made by *Bleecker*, and the line actually run by him, the lot No. 48. includes the premises in dispute, and the outlines of the lot are in no part above, and in many places within the distance of two miles from the creek, or river. The outlines of No. 48. if I rightly understand the special verdict, do not violate the rule adopted by the state, although the general outlines of the whole patent do. And as this survey has been made, and generally acted on, for half a century, I am not disposed to call it in question, on an occasion when it does not interfere with the true rule which ought to have been adopted.

The remaining question is, whether the representatives and grantees under *Douw* are not estopped from controverting the survey of *Shepherd*, by the admissions

and acts of their constituent, in relation to No. 48. of which the premises in dispute are part. It does not appear that *Douw* employed *Shepherd* to subdivide No. 48. that he gave him instructions, or that he was apprised of the mode of his (*Shepherd's*) procedure, when he paid him for the survey. It would then be a harsh and violent construction of this transaction, to conclude *Douw* as to a survey, of the principles of which he was ignorant. Lot No. 48. was known only as such by the original partition of *Bleecker*. A direction to subdivide this lot, was a direction, in effect, to conform to the survey of *Bleecker*. The lease of *Douw*, given in 1785, for the lot No. 13. part of No. 48. bounds by the south line of No. 48. Whether this is to be considered in reference to the line of *Bleecker*, or the line of *Shepherd*, is not clear; but as *Douw* only directed a subdivision of the original lot No. 48. we are to suppose that he intended to go to the south line of the original partition of the patent. At any rate, it would be a precipitate and unjust determination to say, that the errors of a surveyor are to operate as an *estoppel* to the claims of the proprietor, upon grounds so equivocal and obscure.

Although I entertain no doubt, upon the question of law, yet I am not altogether clear on the question of the bounds of the patent, arising upon the special verdict. So far, however, as I can judge, upon a point so complicated, and on a subject so foreign from my usual range of investigation, I am for affirming the judgment of the supreme court.

A majority of the court being of the same opinion ; it was, thereupon, ORDERED, ADJUDGED and DECREED, that the judgment rendered by the supreme court in this cause, be affirmed.

Judgment of affirmance.