Larkin vs. Noonan, impleaded with another.

Proceedings upon a petition to the governor for the removal of a sheriff from office are *quasi* judicial, and statements made in such petition, if pertinent, are absolutely privileged; and no action for libel, founded upon them, can be maintained.

In an action for libel founded on such statements, the court properly refused to permit the complaint to be amended at the trial by inserting an averment of express malice, and want of probable cause in making such statements. Such amendment would not help the case as an action for libel, and should not have been permitted for the purpose of changing it into an action for malicious prosecution.

APPEAL from the Circuit Court for *Racine* County.

Action for a libel. The complaint, after certain averments as to the character and reputation of the plaintiff, and that at the time of the alleged libel he was [sheriff of Milwaukee county, alleges, in substance, that on the        day of November, 1861, at the city of Milwaukee, defendants "falsely, wickedly and maliciously did compose and publish  *  *  concerning the plaintiff, as such sheriff," certain "false, scandalous, malicious and defamatory matter," which is then set out in full, with appropriate inuendoes. In the alleged libel, the plaintiff is charged with "several attempts to cheat and defraud the county of Milwaukee," and with gross neglect of duty as such sheriff, sufficient to call for the executive interference and demand his removal from office as such sheriff; and these charges are followed by specifications.

The defendant *Noonan* answered, in substance, that on the

day of such alleged publication he had good reason to believe that the charges so made were true; that they were made, in manner and form as required by law, to the governor of this state, with the request that they might be investigated, and that, if they were found true, plaintiff might be removed from said office of sheriff, pursuant to law; and that they were not published in any other way than by the presentation thereof to the governor.

The action was commenced in Milwaukee county, but removed to the county of Racine. On the trial, plaintiff stated that the fact of publication was admitted in the answer, and that he would offer no other evidence of that fact. He was then sworn as a witness in his own behalf; but the court, on defendant's objection, refused to admit any evidence, holding that the publication admitted by the answer " was absolutely privileged, and was not libellous." Plaintiff then asked leave to amend his complaint by inserting an allegation that defendants made, published and delivered to the governor said charges, " for the purpose of causing the plaintiff to be removed from the office of sheriff of said Milwaukee county; said defendants then and there having no reason or probable cause to believe, and not believing, said charges, or any of them, to be true; but that said defendants were actuated in making said charges by motives of personal hostility to the plaintiff, and acted in that behalf from motives of express malice towards the plaintiff." The amendment was refused, and judgment rendered for said defendant; from which the plaintiff appealed.

*Levi Hubbell*, for appellant:

1. In *Thorn v. Blanchard*, 5 Johns., 508, it was decided that false and defamatory matter contained in a petition addressed to a competent tribunal, for the purpose of procuring the removal of a public officer, was libellous if express malice was shown. Two members of the Court of Errors expressed an opinion that the plaintiff must show the publication to have been both malicious and groundless. But that doctrine has

never been sanctioned by any court either in New York or in any of the United States. In *Howard v. Thompson*, 21 Wend., 326–31, the point was examined by Justice COWEN, with his usual ability and exhaustive research, and with an evident inclination to follow the dicta of Senators CLINTON and L'HOMMEDIEU in *Thorn v. Blanchard*; but he abandoned the position as not sustained by principle or authority; and the case was decided upon other grounds. "In regard to such writings," he says, "there is certainly no authority for saying that, *in form*, the injured party should be *put to his action for a malicious prosecution.*" And he cites *Thorn v. Blanchard*, 5 John., 508; *Gray v. Pentland*, 2 S. and R., 23; and *Vanderzee v. McGregor*, 12 Wend., 545. He also mentions *Rex v. Baille*, 2 Esp., 91, and *Fairman v. Ives*, 5 Barn. & Ald., 642, as holding the doctrine that in such cases there was no *publication.* But no such point was decided in *Fairman v. Ives*, and the doctrine has never been sanctioned by any subsequent English or American case. And he concludes: "There is room I think for saying, on principle and authority, that, on showing enough to take away the privilege, that is to say, when the party has defrauded the rule which confers it, *he is a false libeller.* The rule is void as to him." * "On its appearing that [the statements] are *privileged*, the defendant is protected under the general issue, *until malice is shown.*" See also p. 325; *King v. Root*, 4 Wend., 138; *White v. Nicholls*, 3 How. (U. S.), 266; *Gray v. Pentland*, 2 Serg. & Rawle, 23; *Gilbert v. The People*, 1 Denio, 43–4; *Washburn v. Cooke*, 3 id., 113–14; *Van Wyck v. Aspinwall*, 17 N. Y., 193–94; *O'Donaghue v. McGovern*, 23 Wend., 30–31; 3 Pick., 379; 12 id., 163; 15 id., 327; 7 Gray, 301; 4 Conn., 91; 8 Blackf., 155; 9 N. H., 34; 12 S. & M., 704; 23 Texas, 9. 2. The plaintiff's complaint in the present case was good and sufficient *without amendment.* This is expressly decided in *Purdy v. Carpenter*, 6 How. Pr. R., 361. The alleged publication, upon its face, was libelous, charging the plaintiff, as sheriff, with wilful fraud, false pretenses, and

premeditated complicity in murder. It was presumed malicious until its truth was proved. *King v. Root*, 4 Wend., 138; 3 Denio, 112; *Calkins v. Sumner*, 13 Wis., 196. If, however, the defendant showed it to be a "privileged communication," the effect was simply to take away the presumption of malice, and throw on the plaintiff the onus of proving it. *Van Wyck v. Aspinwall*, 17 N. Y., 193; 21 Wend., 321–2, and cases above cited. 3. Under the pleadings in this case, the question for the court was the same as if the complaint had set forth the purpose and manner of the publication, and charged it to have been done maliciously and *without probable cause.* The plaintiff alleged generally that the defendant, "falsely and maliciously" published of him, &c., "false, malicious and defamatory matter." This publication was actionable, without the explanations and qualifications set forth in the answer, and none the less so with those qualifications, if done *maliciously*; and *that* the plaintiff offered to prove. There was no less an issue because the plaintiff had to prove *malice*, and if he did, the defendant then had to prove probable cause for making the charges. The pleadings were substantively like others in decided cases. See the pleadings in *Thorn v. Blanchard*, *White v. Nicholls*, and *Calkins v. Sumner*, above cited, in none of which was want of probable cause alleged. To require such an allegation is to render the action, in substance and effect, one for *malicious prosecution.* In that action the plaintiff *must* allege and prove want of probable cause; but in libel he need not. The most that can be said is, that in case of a false and malicious *publication of a privileged communication*, the defendant *may* show "probable cause;" and if he does, or, if "it comes out on the whole evidence that there was probable cause," he may stand justified. 21 Wend., 330, and cases there referred to; contra, *White v. Nicholls*, cited above, 291. It is believed no case has gone so far as to require want of probable cause to be alleged, where the publication was charged to be both false and malicious. "The pro-

tection is not absolute; but the plaintiff may *aver* and *prove* that the communication was false and malicious. This was the doctrine of *Thorn v. Blanchard.*" COWEN, J., in 23 Wend., 30. 4. The defendant's claim that the petition, in this case, was a "quasi-judicial" proceeding, and therefore was absolutely privileged," is not sustained by reason or authority. There is no such distinction in the books. It is only when false and scandalous matter is spoken or written, "in the course of *judicial* proceedings," and is *pertinent* and *material* to the case, that the privilege is absolute. Starkie on Slander, 182–194; *Astley v. Younge,* 2 Burr., 807; *Jennings v. Paine,* 14 Wis., 360, and cases cited. The rule applies to proceedings in Parliament, because it is a "High Court;" and, by analogy, to legislative proceedings in this country. 3 Sandf., 349; 2 Burr., 807. This is the utmost extent of the rule. The term "judicial proceedings" is limited, technical, and well understood; and the classes of cases embraced therein, and held to be absolutely privileged, have been often defined. *Gilbert v. The People,* 3 Denio, 43; *Hastings v. Lusk,* 22 Wend., 416, 417; *Cook v. Hill,* 3 Sandf., 349; 13 Wis., 196.

*I. P. Walker,* for respondent, to the point that an investigation by the governor, under sec. 4, ch. 14, R. S., is a judicial, or *quasi* judicial proceeding, and that the alleged libel in this case was therefore absolutely privileged, and could not be the foundation of an action for libel, cited 1 Coke, 14; 1 Saund., 131; Hob., 266; 5 Johns., 508; 2 Sandf., 195; 3 id., 341; 1 Denio, 41; 4 Coms., 91; 13 Wis., 193; sec. 1, art. 4, Constitution of Wis. To the point that in actions for libel upon any species of privileged communication, the plaintiff must aver and prove the want of probable cause, as a substantive fact, he cited 2 Duer, 674; 5 Sandf., 557; 21 Wend., 319; 23 id., 26; 3 Denio, 110. He also argued that the proposed amendment would have converted the action into one for malicious prosecution; and that the refusal of it was a proper exercise of discretion. 10 How., 193; *Roth v. Schloss,* 6 Barb.,

368; *Corning v. Corning*, 5 Sandf., 224; *Harrington v. Slade*, 22 Barb., 161. To the point that actions for malicious prose-cution are not favored by courts, he cited 3 Bl. Comm., 126 and note; 1 Term, 518; Carth., 421; 1 Ld. Raymond, 253; 14 East, 302, 305; 2 Serg. & R., 23.

*By the Court*, COLE, J. The libellous matter complained of was contained in a petition addressed to the governor to pro-cure the removal of the appellant, the plaintiff below, from the office of sheriff of Milwaukee county on account of gross mis-conduct in office. It is claimed by the counsel for the respond-ent, that an application to the governor for such a purpose is, under the constitution and laws of this state, strictly in the nature of a judicial proceeding, and therefore, that the matters stated in the petition, if pertinent to the subject of investiga-tion, are privileged, and furnish an absolute exemption to all liability in an action of libel. If this main proposition thus insisted upon be correct, that such an application is in the na-ture of a judicial proceeding, then we suppose all matter which is embraced in the petition, if pertinent and relevant, is privi-leged. This seems to be a well established principle. *Jen-nings vs. Paine*, 4 Wis., 358; *Lake vs. King*, 1 Saunders, 120; Starkie on Slander (Wend. ed.), 240; *O'Donaghue vs. Mc-Govern*, 23 Wend., 25; *Hastings vs. Lusk*, 22 id., 410; *Gilbert vs. The People*, 1 Denio, 41; *Garr vs. Selden*, 4 N. Y., 91; *Hartsock vs. Reddick*, 6 Blackf., 255. And the rule is certainly sustained by the most weighty reasons and the highest consid-erations of public policy. Can then a petition addressed to the governor, asking the removal of a person from the office of sheriff on the ground of malversation in office, be said to be in the nature of a judicial proceeding? We are inclined to the opinion that this question must be answered in the affirm-ative.

Our constitution provides that the governor may remove a sheriff upon giving him a copy of the charges against him and

an opportunity of being heard in his defense.   Sec. 4, Art. 6.
The statute provides the same thing.   Sec. 4, chap. 14, R. S.
·1858.   It is obvious that these provisions clothe the governor
with a power over the proceeding strictly analogous to that
exercised by a court in the trial of a cause.   He is required to
furnish the accused with a copy of the charges made against
him, and give him an opportunity of being heard in his de-
fense.   This involves as a consequence a trial—a legal investi-
gation into the truth of the charges.   Witnesses may be sub-
·poenaed (sec. 1, chap. 137, R. S. 1858), sworn·and examined.
Testimony must be taken, weighed and considered·   And al-
though the proceeding is summary, and no trial by jury allowed,
yet it conforms in important particulars to the proceedings
in judicial tribunals.   If the charges are sustained by satisfac-
tory testimony, the governor may remove the delinquent
officer.   If the charges are not proven, the officer must be ac-
quitted.   Hence, in the hearing of causes of this nature, the
governor acts in a quasi-judicial capacity (*Randall v. The State*,
16 Wis., 340), and the proceeding is analogous, in its most es-
sential features, to a judicial hearing and investigation.   And
there would therefore seem to be the same grounds of public
policy for saying that all matters contained in the petition
which are material and pertinent to the subject of inquiry
should be privileged, that there is for holding that what takes
place in the ordinary course of justice is absolutely exempt
from an action for libel.   The same rule as to impunity
should be applied in the one case as in the other.   Upon this
question we cannot better express our views than by adopting
the just and forcible language of Senator CLINTON, used by
him in giving his opinion in *Thorn v. Blanchard*, 5 Johns., 507–
530:   " There is a certain class of cases wherein no prosecution
for a libel will lie, when the matter contained in it is false and
scandalous; as in a petition to a committee of parliament; in
articles of the peace, exhibited to justices of the peace ; in a pre-
sentment of a grand jury ; in a proceeding in a regular course

of justice; in assigning, on the books of a Quakers' meeting, reasons for expelling a member; in an exposition of the abuses of a public institution, as in the case of the deputy governor of Greenwich hospital, addressed to the competent authority to administer redress.  The policy of the law here steps in and controls the individual rights of redress.  The freedom of inquiry, the right of exposing malversation in public men and public institutions, to the proper authority, the importance of punishing offenses, and the danger of silencing inquiry and of affording impunity to guilt, have all combined to shut the door against prosecutions for libels, in cases of that, or of analogous nature." (See the instructive opinion of Justice COWEN, in *Howard v. Thompson*, 21 Wend., 319). If we are right in holding that a petition addressed to the governor, asking the removal of a person from the office of sheriff, is exempt from an action for libel, there is an end of this case.  It is true the plaintiff offered to amend the complaint by averring express malice and want of probable cause in making the charges of official misconduct against him, but this obviously would not help out the case as an action for libel.  And if the object of the amendment was to convert the action into one for malicious prosecution, then it was properly denied.

For the reasons given we think the judgment of the circuit court must be affirmed.

DOWNER, J., took no part in the decision of this case.