## JOHNSON and others, adm'rs, &c. vs. CORBETT and others.

Where the decedent, at the time of his death, was seised of a large real estate, and had personal estate sufficient to pay his debts, exclusive of debts which were then fully secured by mortgages upon his real estate, and of one debt for the purchase money of land which had not been conveyed to him by the vendor; and his personal representatives, after his death, paid most of the debts in full, except those charged upon his lands, and made some payments towards some of the latter class of debts, out of his personal estate; *Held*, that upon a final settlement of the accounts of the personal representatives, the surrogate ought not to allow the debts of the decedent secured by mortgages upon the real estate which had descended to his heirs, to be paid pro rata with debts not thus secured, out of the proceeds of the personal estate.

Where debts of the testator are secured by mortgage upon his real estate, the revised statutes make such real estate, in the hands of his heirs or devisees, the primary fund for the payment of such debts; and only the balance of the debt of each mortgagee, which cannot be collected by a foreclosure and sale of the mortgaged premises, is to be allowed, as a claim to be paid pro rata out of the proceeds of the testator's personal estate.

In such a case, if the mortgagee has received any part of his debt from the personal representatives, out of the proceeds of the personal estate is insufficient to pay all the debts, the amount thus paid to him, must be charged to him as a part of his distributive share of the personal estate, in the distribution thereof among the creditors of the decedent.

But where the personal representatives have paid to the mortgagee more than his pro rata share of the personal estate, they cannot, as against the other creditors, be allowed the surplus thus paid to the mortgagee.

Where a mortgage debt is primarily chargeable upon mortgaged premises which are sufficient to pay such debt, in the hands of the heirs or devisees of the decedent, if the mortgagee, to accommodate such heirs or devisees, delays the foreclosure of his mortgage, until the lands fall in value, and become insufficient for that purpose, and the personal representatives of the decedent, in the mean time, pay out the whole personal property, the mortgagee cannot call on them to pay the deficiency of the proceeds of the mortgaged premises to satisfy the balance due upon the mortgage.

Upon a contract by the decedent for the purchase of land, where the land has not been conveyed to him, nor the purchase money paid, the land contracted for is, in equity, considered as real estate, and as belonging to the heirs of the decedent. And the unpaid purchase money is primarily chargeable upon his personal estate, and is to be paid by his executors or administrators, for the benefit of such heirs.

For the purpose of ascertaining the pro rata dividends of the creditors, upon the final settlement of the accounts of the executors or administrators of the decedent, all the debts due to creditors of the estate, which were not secured by mortgage upon

*Johnson v. Corbett.*

real property, nor entitled to a preference in payment, should be added together; including therein the balances of debts not fully secured by mortgage. And the per centage which the personal property will pay of that amount should be computed; although some of those debts may have been previously paid by the personal representatives of the decedent, out of the personal estate. From the pro rata dividend, for each debt, when thus ascertained, there should be deducted the sum or sums already paid thereon by the executors or administrators; and the balances of such pro rata dividends should alone be charged to the personal representatives, on account of the estate of the decedent which came to their hands.

Where the decedent owes a debt to a creditor who is indebted to the decedent in a larger amount, the debt of the testator should not be added to his other debts in computing the pro rata dividend; but it should be offset against the larger debt due the decedent; and the balance of such larger debt, only, should be charged to the personal representatives, in their account of the estate which has come to their hands. And where the smaller debt is due to the decedent, it should be deducted from the larger debt of his creditor; and the balance only should be brought into the account, as the debt of the decedent upon which the pro rata dividend is to be computed.

When an executor or administrator, by mistake, receives money not due to the estate of the decedent, he should not be charged with it in the settlement of his accounts; as he is bound to refund it to the person who paid it to him by reason of such mistake.

*Aliter*, where the person who paid the money has relinquished his claim to it, after being informed of such mistake.

Rent due from the testator upon a church pew, is not a preferred debt, under the provisions of the revised statutes; unless it is rent due upon a term of years in such pew, which belongs to the executors or administrators as a part of the personal estate of the testator.

The amount previously paid by the executors or administrators, to a creditor, towards his pro rata dividend upon a debt actually due from the decedent, should be allowed to them upon the final settlement of their accounts; although such creditor neglects to come in and prove his debt, and to claim a dividend thereon, upon such final settlement.

The widow is entitled to her reasonable sustenance, out of the estate of her deceased husband, during her quarantine, whether the estate of the decedent is solvent or insolvent.

But no provision is made by law for the sustenance of the children of an insolvent decedent, out of his estate; the statutory provision for sustenance being confined to the widow, and to the exempt articles which are given to her for that purpose.

An administrator, who suffers or permits his co-administrator to misapply the funds of the estate, where he has the power to prevent it, is liable in equity for such misapplication; if the amount misapplied cannot be collected from his co-administrator.

But where a misapplication of the estate is by applying the personal estate to the satisfaction of debts chargeable upon the real estate belonging to the heirs at law of the decedent, the administrator who is compelled to pay the amount, so misapplied,

Johnson v. Corbett.

to other creditors of the decedent, is entitled to a remedy to recover the same out of the real estate in the hands of the heirs.

THIS was an appeal by the administrators of the estate of Lyman Betts, deceased, from the sentence and decree of the surrogate of the county of Kings, upon the final settlement of the accounts of the appellants. Lyman Betts died in 1835, seised and possessed of a large real and personal estate in Brooklyn; where he was domiciled at the time of his death. The amount of his personal estate was between fifty and sixty thousand dollars. And it was nearly or quite sufficient to pay all his debts, exclusive of those debts, which were secured by mortgages upon real estate, and of one debt which was due upon a contract for the purchase of lands which had not been conveyed to him by the vendor. The lands mortgaged being then of sufficient value to pay all the debts charged thereon, and the property of the decedent, including his real estate, being considered much more than sufficient to pay all his debts, the acting administrator paid most of the debts which were not charged upon real estate, in full. Among other mortgages, there was one to A. Hamilton, upon three lots of land, upon which the administrators paid the interest for eighteen months. When that mortgage became due, it was foreclosed; and upon the sale, in February, 1839, there was a deficiency of about $1600. The surrogate, upon the statement of the account, allowed this deficiency as a debt due from the estate, and as entitled to its pro rata dividend, out of the assets in the hands of the administrators. S. Cornell had a bond and mortgage, upon sixteen lots in the village of Brooklyn; which lots at the death of the intestate, and at the settlement of the account of the administrators, were worth much more than the whole amount of the mortgage, including the necessary expense of foreclosing the same. But the surrogate allowed the mortgagee to prove, as a debt against the personal estate, the amount of the interest due at the time of accounting, and decreed the payment of a pro rata dividend thereon; although no claim had been presented, under the order of the surrogate requiring creditors to exhibit their claims. Bradley, the president of the Patriotic Bank, held a second mortgage upon the same sixteen lots,

secured by a bond. That bond and mortgage were assigned to him in 1838; upon which bond and mortgage the acting administrator had made two semi-annual payments of interest, previous to the assignment. The surrogate allowed the whole amount remaining due upon this bond and mortgage, at the settlement of the account, as a debt to be paid pro rata out of the personal estate; without reference to the value of the land upon which it was a lien. No notice of the claim of the mortgagees under this mortgage had been presented to the administrators, under the surrogate's order. Corbett held a third mortgage upon the same sixteen lots, to secure the payment of two notes given by the decedent; upon which notes $1000 had been paid by the administrators. No notice of this claim had been presented, under the surrogate's order. But the whole balance remaining due thereon was allowed, as a debt against the estate, to be paid pro rata out of the personal estate in the hands of the administrators. The widow of the decedent, who was administratrix, claimed an allowance, out of the estate, for her reasonable sustenance; which claim was not allowed. The decree directed the several amounts due to the creditors whose claims were allowed by the surrogate, to be paid by all the administrators jointly, within ninety days; including the whole amount due to the mortgage creditors for their respective shares of the mortgage debts. Various errors also occurred in the amount charged to the administrators, and in the allowances to them for preferred claims, &c. and in computing the allowances to the creditors. As to all which matters, the administrators appealed to the chancellor, from the decree of the surrogate.

*J. A. Lott & G. Wood*, for appellants.

*B. W. Bonney*, for Hamilton and Bradley, respondents.

*N. B. Morse*, for the children of the decedent.

THE CHANCELLOR. The objection that the debts of the mortgagees were not presented to the administrators, during the

Johnson *v.* Corbett.

time of the running of the notice for creditors to exhibit their claims, under the surrogate's order, is not well taken. The object of the statute is to compel the creditors who have debts due from the estate, to present them to the executor or administrator for allowance or rejection, so that he may know what debts exist, and the validity thereof. And where, as in this case, the debts have been actually presented, and acknowledged by the executor or administrator, before the making of the surrogate's order for notice to the creditors to exhibit their claims, it cannot be necessary that the creditors should present them again for allowance. Here the acting administrator had recognized each of the debts due upon the bonds and mortgages, and had made payments of interest thereon; and upon the debt of Corbett he had also paid a part of the principal moneys. And in his examination, he states that he knew the amount was due to Corbett, and that it was also secured by the mortgage. The mere fact of knowledge on the part of the administrator, that a creditor held a bond against a decedent, which was secured by mortgage upon his real estate, would not of itself be sufficient to prevent the necessity of exhibiting his claim to the administrator. But where the administrator admits the validity of a debt against the personal estate, by paying the interest thereon from time to time out of the assets in his hands, it is tantamount to a formal presentment of the evidence of such debt, and an admission of its correctness, after a publication of the notice to creditors under the surrogate's order.

But the surrogate was clearly wrong in allowing mortgage debts of the decedent, which were fully secured upon the real estate which had descended to his heirs, to be paid absolutely and unconditionally, out of the personal estate; pro rata with the debts of creditors, whose claims were upon the personal estate only. The revised statutes expressly charge the mortgage debts upon the mortgaged premises, in the hands of the heir or devisee, as the primary fund. (1 *R. S.* 749, § 4.) The object of the statute was not to deprive the mortgagee of any part of his debt, where the real estate, upon which it is a specific lien, is insufficient to pay the whole of the debt; including the necessary ex-

Johnson v. Corbett.

pense of foreclosure. All he can ask for, however, either at law or in equity, under the provisions of the revised statutes, is that the balance of his debt, beyond the value of the real estate upon which it is a lien, shall be paid out of the personal estate pro rata with the claims of other creditors. And that pro rata allowance should not be computed upon the whole mortgage debt, but only upon that part of it which is equitably chargeable upon the personal property. In other words, so much of the debt as can be raised out of the mortgaged premises, is to be considered as if it had been paid by the heirs at law; or by the decedent before his death. And the mortgagee is to come in, pro rata with the other creditors as to the residue of the debt; including what has already been paid by the administrators, out of the personal estate.

Upon this principle, the decree in favor of Hamilton is for too much; instead of being for too small a sum; as he contends in his answer to the petition of appeal. For, although the surrogate has very properly made a deduction of the three several payments of interest, for the purpose of ascertaining the pro rata allowance upon the balance if all the allowances to other creditors are right, he seems to have forgotten that Hamilton had actually received from the administrators more than his pro rata proportion of such interest; and that the difference, between what was really paid and what he was entitled to pro rata, should have been credited to them, towards his pro rata proportion of the residue of his debt, which was not raised out of the mortgaged premises. The same mistake has been made by the surrogate in respect to the two payments of interest, of $180 each, which were paid by the administrators, for interest upon the Bradley mortgage, in November, 1835, and May, 1836, before that mortgage was assigned; even if Bradley, the assignee, was entitled to a pro rata allowance upon the whole balance of the mortgage debt, without reference to the value of the real estate upon which that mortgage is a lien.

There is not the least doubt, from the testimony, that the mortgaged premises are, and always have been, more than sufficient to pay the whole of Mrs. Cornell's first mortgage upon

Johnson v. Corbett.

the sixteen lots, and the accruing interest, and the costs of fore-closure; if she had thought proper to foreclose such mortgage within a reasonable time after it became due. Her claim upon the personal estate should therefore have been wholly excluded, in making the pro rata dividend among the creditors who had claims upon the personal estate only. I think the evidence also shows that such real estate, upon which Bradley holds the second mort-gage, is also sufficient to pay that mortgage, and the prior incum-brance, if he had proceeded to foreclose his mortgage within a reasonable time after it became due. The amount of his bond and mortgage, therefore, should have been left entirely out of the case, upon making the pro rata allowance to creditors who had liens upon the personal estate. And for the same reason, the administrators, in case of a deficiency of assets to pay other cred-itors, ought not to be allowed for the interest paid upon that mortgage, nor for interest paid upon Mrs. Cornell's mortgage; both of which debts were fully secured upon real estate. The compu-tation, between the administrators and other creditors, should have been made in the same manner as if that interest had not been paid. And the administrators must look to the heirs at law, and to the widow, who have received the rents and profits of the mortgaged premises since the death of the intestate, for a refunding of those payments of interest, which have been im-properly made out of the personal property of the decedent.

Even if the real estate was not sufficient to pay any part of the third mortgage, to Corbett, the surrogate has made a mistake in computing the amount of Corbett's pro rata share of the personal property. For, to ascertain Corbett's share, the surrogate should have taken the whole of his debt, including the $1000 paid by the administrators, in June, 1836, and should have made a pro rata allowance upon the whole, as his share of the personal estate. And then the administrators should have been cred-ited with the $1000; as so much paid to him on account of such share.

I am satisfied, however, from the evidence, that if Corbett had proceeded to foreclose his mortgage immediately after the last payment became due, on the first of May, 1836, the real estate,

upon which his mortgage was a lien, would have produced sufficient to pay the amount then due to him, together with both the prior incumbrances, and the expenses of the foreclosure and sale. For, with ordinary vigilance, the property could have been brought to a sale prior to the depression of real estate; which depression commenced with the financial embarrassment of the succeeding year. I have no doubt that this mortgagee, as well as the others, acted from the best of motives in not pressing the foreclosure of his mortgage to the injury of the heirs of the decedent; as property was then supposed to be rising in value. But it must be recollected that the administrators were also acting upon the same mistaken supposition, that the decedent would have ample property to pay his debts, and leave a large surplus for the heirs at law. There is no good reason, therefore, why the mortgagees who have waited until the mortgaged premises had so much fallen in value, to accommodate the heirs and save them from loss, should throw the whole loss upon the administrators; who, in the meantime, had paid out the whole personal property for the payment of other debts, knowing that the real estate was then sufficient to pay the debts charged thereon. If it should unfortunately happen, that the real estate does not produce enough to pay the balance due upon Corbett's mortgage, the mortgagee must look for payment to the other real estate, if any there is, in the hands of the heirs at law; for whose benefit alone the delay in foreclosing the mortgage could, in any event, have operated. The administrators must of course look to the same real estate for remuneration for the $1000 paid out of the personal estate towards this mortgage. For that sum must be deducted from the gross amount of debts chargeable upon the personal estate, as between the administrators and the other creditors.

Neither party makes any complaint as to the decision of the surrogate, in relation to the payment of interest on the mill pond lot, except as to the deduction pro rata; nor is there any proof as to the value of that property. In equity, upon such a contract, the land which the decedent had contracted to buy but which had not been conveyed, would be considered as real

estate belonging to the heirs at law. And as between them and the personal representatives, the balance due for the purchase money would be a charge upon the personal property of the decedent. These partial payments should, therefore, have been allowed in full. But as the vendor has made no claim upon the administrators, beyond the amount he has received from them for interest, I presume that he has elected to look to the real estate, in the hands of the heirs, but of which he still holds the title, as his security for the residue of the purchase money, which remains unpaid. Or, probably, he may have arranged with the heirs, to retain the real estate in payment of that balance, which amounts to the same thing, as to them; as they can only be charged as heirs with the value of the mill pond lot, subject to the lien of the unpaid purchase money which still remains due.

The appellants are right in supposing that the decision of the surrogate is erroneous in relation to the Hurst debt. For the purpose of ascertaining the pro rata dividend all the debts, due to creditors of the estate, which are neither secured by a mortgage upon real property, nor entitled to a preference in payment, should be added together, including the balances of mortgage debts not fully secured; and the per centage which the personal estate will pay of that amount should be computed, although some of those debts had been previously paid by the administrators, either wholly or in part. From the pro rata dividend of each debt, when thus ascertained, there should be deducted the sum or sums already paid by the executor or administrator; and the surrogate should only decree payment of the deficiency of each creditor's pro rata share which he has not already received. Here some of Hurst's notes were paid in full, and others were partially paid; leaving a balance due upon the last note of $224,71, if the surrogate's return is correct. The administrators had previously paid, upon this and other notes of Hurst, something like $4000; which was considerably more than his pro rata share of his whole debt. Yet the surrogate has allowed the administrators, in settling the pro rata allowance, only a part of the previous payments; and has decreed a payment to Hurst of the further sum

of $188,03.    This is clearly erroneous, if the other debts of the testator, upon which a pro rata was computed, were right.

A mistake has also occurred in the amount decreed to be paid to Barclay & Livingston; which is for the whole pro rata allowance upon the balance of their account, without deducting the $24,08, which the administrator paid him beyond the pro rata proportion, upon the previous payments to them.

The decree is also erroneous in computing the pro rata allowance upon the amount of the debt due to F. J. Betts.    As this debt was an offset against the larger sum due from him to the decedent, and which has been charged to the administrators, they should have been allowed in full for the debt paid to him, which was a proper subject of set-off.    In other words, the smaller debt due to him, should not have been taken into the account at all, in ascertaining the amount of the debts upon which a pro rata allowance was to be made; but it should have been offset, and deducted from the amount charged to the executors as having been received from F. J. Betts.    An error has also occurred in relation to the debt due to Brown & Betts; which debt should have been offset against the smaller debt due from them as mentioned in the inventory.    And the full amount of the debt due to the administrators should have been allowed to them, without deducting any thing for the pro rata allowance thereon, or carrying that debt into the estimate.    The balance only should have been carried into the estimate, and the pro rata allowance cast upon that.    A similar error occurred in relation to the debts due to and from McConn & Sherman.    They should have been offset, and the pro rata merely cast upon the balance due from the estate.    The pro rata allowance appears to be cast right upon the balance due on Sophia Cobb's note, after deducting the offset of $10 due from her to the estate, as mentioned in the inventory.    But the surrogate, by mistake, has neglected to deduct the $10 thus offset, from the amount of the inventory charged to the administrators.

The proof shows that Hertell's debt was much larger than the amount paid by the administrators; and that the payments made by them to him were less than his pro rata allow-

ance would have been upon his whole debt. The administrators should then have been allowed the whole amount paid to him ; although he neglected to come in and claim the rest of his debt before the surrogate, upon the final settlement of the accounts. Those payments should therefore be deducted, in the same manner as if they were for a preferred debt, before proceeding to ascertain the balance of the fund, in the hands of the administrators, upon which the pro rata allowance for other debts is to be computed. His neglect to come in and claim the residue of his pro rata share, upon the whole debt, is for the benefit of other creditors; as it will increase the dividend coming to them. But it cannot give them the further advantage of depriving the administrators of a part of the amount which they had rightfully paid to him, in a due course of administration, upon claims which are proved to have been due.

It appears, from the testimony, that there was an error in posting about $68, to the account due from Dillon to the estate, instead of posting it to the account of Day ; to whom that sum was properly chargeable. The administrators, by mistake, received the whole amount of Dillon's account, including this erroneous posting ; but when they afterwards discovered the mistake, they charged it to Day's account, and received the same from him. And because the administrators had not yet paid the $68 back to Dillon, to whom it rightfully belongs, the surrogate has charged them with the $68 twice, as assets in their hands for the creditors of Betts. This is clearly erroneous. For Dillon is entitled to a return of the money paid by mistake. If he had been aware of the mistake at the time he made the payment, or if he had given up his claim to it, for the benefit of the estate, after being apprised of the facts of the case, the creditors would have been entitled to it, as assets in the hands of the administrators for the benefit of the creditors. But the facts sworn to in this case will not warrant such an inference. And the court cannot presume, from any thing that appears in evidence here, that the administrators intend to defraud Dillon, by withholding from him this over-payment, even if they have the legal power to do so. But he certainly can never recover it back, if the surrogate has rightfully decreed that it belongs to the creditors of Betts.

The decree is erroneous in not allowing the administrators the $18,36 paid to the surrogate upon obtaining letters of administration, &c. It is also erroneous in not allowing a pro rata portion of the payment of costs, to Alexander, for which a proper voucher was produced. The three several sums paid for discount on renewed notes, as mentioned in the petition of appeal, appear to be sums actually paid by the administrators for debts, for which a pro rata allowance should have been made. For those sums, together with the amount paid on the old notes, when they were renewed in part, and on the new notes which did not draw interest until they were payable, constituted the whole debts paid ; upon which the pro rata allowance should have been computed. There is also an error in crediting the rent of the store at too small a sum. The pew rent does not apppear to be a preferred debt, under the provisions of the revised statutes ; unless it was a lease of the pew for a term of years, so as to go to the administrators as a part of the personal estate. Or at least it should be made to appear that the giving of a preference in payment of this pew rent would in some way benefit the personal estate of the decedent. (2 R. S. 87, § 30.) Nothing of that kind appears here, and a pro rata payment only could be properly allowed. I do not see any thing to satisfy me, that the four debts, referred to in the petition of appeal, could not have been collected by the administrators, in the use of reasonable diligence.

The widow was entitled to her reasonable sustenance out of the estate of her husband, during her quarantine, by the express provisions of the revised statutes. (1 R. S. 742, § 17.) And the provision being general, it must be construed to apply to the case of a solvent as well as of an insolvent estate. But the allowance is only intended to apply to the sustenance of the widow herself. No provision is made by law for the maintenance of the children of her deceased husband, out of an insolvent estate, beyond the exempt articles allowed to the widow for that purpose.

The decree of the surrogate must be reversed ; with costs to the appellants, to be paid out of the estate in their hands. And the proceedings must be remitted to the surrogate of Kings county, with directions to restate the accounts in conformity to

this decision; and to make a final decree in the case, upon the evidence already taken therein, and no other. Upon such final decree, he must direct the acting administrator and administratrix, who are primarily chargeable with any misapplication of the assets, to pay to the creditors entitled thereto, the amount of their several shares still remaining in the hands of such administrator and administratrix, or which has been misapplied by them. And if the same cannot be collected of them, by execution upon such decree, then the other administrators, who are secondarily liable in equity, in consequence of having suffered or permitted such misapplication of the funds, must pay the deficiency to the creditors. But the decree must be without prejudice to the rights of any of the administrators, as against the real estate in the hands of the heirs at law; so far as the misapplication of the personal estate has been caused by paying more than a pro rata share of debts, to creditors who would have been entitled to claim the residue of their debts as a charge upon the real estate descended to the heirs at law.

The surrogate must be directed, in restating the accounts, to correct any errors in computation merely, which he shall discover to have been made in his former statement of the accounts, although not embraced in the errors above referred to in this opinion; whether such errors are in favor of the appellants or against them.