## VROOMAN *vs.* SHEPHERD.

Where a tenant by the curtesy and the heir are out of possession, and the land is held adversely to both, the tenant by the curtesy cannot convey or release to the heir; and it will make no difference that the heir is a child of the tenant by the curtesy. CADY, J. dissenting.

The parties to such conveyance or release, however, are not liable *criminaliter.*

The seisin of the wife is sufficient to make the husband tenant by the curtesy, notwithstanding the possession of a vendee.

One in possession of land under a contract may hold adversely as against strangers.

The possession of the vendee cannot become adverse to the vendor, at least until after performance in full by him, and then, it seems, only upon the presumption that a conveyance has been given

If there has been full performance by a vendee, a conveyance may be presumed, after twenty years, the vendee continuing in possession: *Per* HAND, J.

It seems, in the absence of all proof on the subject, if the vendee continues in the undisturbed possession, performance by him may be presumed after the lapse of twenty years from the time he should have performed. *Per* HAND, J.

But a conveyance will not be presumed until the lapse of twenty years after performance; and whether there can be a presumption of such conveyance until the lapse of twenty years after performance is presumed, *quære?* *Per* HAND, J.

THIS was an action of ejectment, for lots A. and B., in a certain allotment of Kayaderosseras patent, in Saratoga county, tried a second time before Mr. Justice Hand, in June, 1851. The jury found a verdict for the plaintiff for the one hundredth part of lot B., and the defendant tendered a bill of exceptions, upon which he now moved for a new trial. The suit was commenced in October, 1845, and was first tried in 1848, and a new trial granted. The plaintiff gave in evidence the patent granted in 1708, to Joies Hoagland, Adrian Hoagland and eleven others, and proceedings in partition, in 1768, by which the land in question fell to Joies Hoagland, and proved that he died without issue; that Adrian had issue; Elizabeth, wife of C. Banker, Helena, wife of Petrus Rutgers, Mary, wife of J. Runadet. A deed from Runadet and others, children of some of the others, to Helena, in 1771, of certain parts of the patent, including the land in question. A partition between the children of Helena, by which lot A. was conveyed to Benjamin Kissam, and lot B. to Annie Sharp. Helena had four children; Adrian Rutgers, who died without issue; Anne Sharp, who died without issue; Helena, wife of C. M. Scott; Catharine, wife of Benjamin Kissam. In 1764, Benjamin Kissam and wife conveyed to Samuel Kissam, the undivided one-third of two-thirds of one-third of two-thirteenths of the land in the patent; and ten days after Samuel reconveyed the same to Benjamin. Benjamin and Catharine had six children. Benjamin; Peter R.; Richard S., who died without issue; Adrian, who died without issue; Samuel, and Helena, wife of —— Hoffman. In 1794, Samuel gave a deed to Peter R., of the lots in question. Peter R. died in 1799, leaving five children; Benjamin, Samuel, Peter R. jr. Catharine, wife of Philip Brotherson, and Esther. H. Palmer, Esq. testified

that Catharine Kissam was married to Philip Brotherson in 1812; but that he could not come within a year; and that he thought her age about 20, when she married, but that he could not tell within a year or two. There was other testimony as to pedigree, family, &c. It was proved that Mrs. Brotherson died in 1822, leaving five children, of whom the plaintiff was one. The plaintiff gave in evidence a quitclaim deed from Philip Brotherson, the father of the plaintiff, to the plaintiff and his brothers and sisters, dated June 28th, 1841; which was objected to on the ground that all the parties to it were then out of possession, and the land held adversely; but the objection was overruled, and the defendant excepted. Also, a warrantee deed from James Jones to the defendant, dated April 1st, 1845, consideration $5000, conveying 106½ acres, the land where Jones lived, in Clifton Park.

The plaintiff also gave in evidence, under objection, the deposition of Raymond Taylor, who testified that he was then (1851) 81 years of age; that in 1800, he resided at Halfmoon, and knew Noah Taylor, who was his brother. That Noah Taylor was in possession of the property in question from 1786 or 1787 to 1801; that he claimed to be in possession under an article between him and B. Palmer, as agent of Peter R. Kissam, which he showed witness. That the witness went in company with Noah to see the widow of Peter R. Kissam, and showed her the writing; and she said there was no one who was authorized to deed. His brother said he had sold it to James Jones; Jones told him so. There was a paper attached to the deposition which the witness stated he believed was signed by his brother. He further testified to the improvements by his brother; that he thought they went to see Mrs. Kissam in 1800. That Jones succeeded his brother in possession. That when they met to see widow Kissam, his brother did not claim that he had complied with the contract. That he heard Jones say he bought of N. Taylor, but he could not give the language. That Jones built several buildings on the lot.

One Morehouse testified to Taylor's occupation, and that he left in 1801, or 1802, or 1803; though he could not say he saw him

cultivate the land as late as 1798. One Wilkins testified that he and Philip Brotherson called on Jones, in 1826, and told him they came to have some understanding or make some arrangement about the lots A. and B., which were pointed out on the map, and about which there was no dispute as to the identity. Jones said he had purchased of one of the trustees, Mrs. Kissam, and she had given him a deed, and he had paid $100, and he had sent the deed to New-York for the other trustees to sign, and they had refused; and until he got a deed he would make no further payments. Witness understood him that he was to give $7 per acre, and that there were 80 acres in each lot. On his cross-examination he stated he thought "furnishing a deed," and "make title," were the words used.

One Higgins testified that Taylor lived on some of the land when he first knew it in 1796, and he thought he left in 1801. That the land was called widow Kissam's. One Vanderwerker testified to admissions of Jones, that he bought the land of Taylor, who agreed to give him a deed for it, but had neglected it. That the defendant told him the land used to belong to the Kissams, and they were the owners. Afterwards he said it was Jones that told him so.

The act of the legislature passed April 8, 1800, appointing Deborah Kissam, Richard S. Kissam, and Samuel Kissam, trustees, &c. to sell the real estate of Peter R. Kissam, was given in evidence. Also an act repealing the same, passed April 22d, 1806.

On the part of the defense, the testimony of a witness given on the first trial in 1848, was introduced, who then testified that one Eldridge was first in possession; who was succeeded by one Brayton, and Jones next. That Jones was on the lot 54 years ago. He thought Eldridge did not claim any title. Brayton built a house upon it. Brayton sold to Eldridge, and Eldridge to Jones. But Jones took the title of Brayton. Jones, when he moved on, claimed the lands. The testimony of another witness given on the former trial, since dead, was read, and he testified that Jones moved on about 50 years ago, and purchased of Brayton, who was then in possession.

Vrooman *v.* Shepherd.

Another witness testified that Jones was on the land before 1800, and claimed the land. In 1803, his barn was burned, and he built another; that there was a building there when he bought; and after 1803, a larger one, in which he kept tavern. Another witness testified that Jones was on the land 52, 53 or 54 years ago, and moved into the tavern; that he bought of Brayton; that he called it his own. Another, that he had known the farm 63 years, and that Jones came there 55 years ago. Another had known the farm 42 years, and Jones had made extensive improvements. Another, that Jones had occupied the north part 50 or 51 years, and claimed the land. That Jones built a large tavern 46 years ago, costing $1500 or $2000, and made other improvements. That Jones told him he bought the land of Brayton, and said he owned it.

There was other testimony for the purpose of impeaching the testimony of some of the plaintiff's witnesses. The defendant introduced a deed of lot A., from B. Kissam to W. Brayton, dated August 1, 1794, and a deed from Brayton to Jones, of the same premises, dated March 25, 1797. The defendant also introduced letters testamentary to Deborah Kissam, on the estate of Peter R. Kissam, dated June 19th, 1799. The witness Palmer stated, that Philip Brotherson and Catharine Kissam were married between the years 1799 and 1802. The testimony being closed, the court, among other things, charged the jury that even if the defendant's grantor was in possession of the premises in question claiming to hold them adversely to the plaintiff and to her father, at the time the deed from Philip Brotherson was given to the plaintiff and the other grantees therein, in 1841, yet said deed was not void under the statute. That he understood this to be the decision of the majority of the court on granting a new trial in this cause. To which the defendant's counsel excepted. 2. The judge further charged the jury, that on the question of adverse possession, if any should be found to have existed, it might become material for them to inquire and find when Catharine Kissam, the mother of the plaintiff, was married to Philip Brotherson; what was her age then; when her first child was born; when her father died; and

when the adverse possession commenced.    3. That if an adverse possession commenced in the lifetime of Peter R. Kissam, and had continued, no subsequent disability of the plaintiff's mother, from infancy or coverture, would stop or prevent the operation of the statute.    4. And if the adverse possession commenced after her father's death, but before Catharine married, her subsequent coverture would not be cumulative, and added to the disability of infancy.    And if the adverse possession commenced before Peter R. Kissam's death, or after his death and before the marriage of Catharine, the operation of the statute would not be suspended or prevented by any claim of her husband as tenant by the curtesy; for in that case there was not sufficient seisin of the wife to create him tenant by the curtesy.    5. That if the adverse possession (if any) did not commence until after the marriage of the plaintiff's mother, or the birth of issue, Philip Brotherson became tenant by the curtesy initiate, and his particular estate would prevent the operation of the statute until the deed given by him in 1841; for until then, the plaintiff had no right of entry.    To this part of the charge the defendant excepted.    The court further charged the jury that if Noah Taylor was in possession under a contract to purchase the land of the Kissams, and sold his right to Jones, who entered and possessed under that contract, Jones could not set up adverse possession as against that title, except that if he had shown the contract complied with fully on his part, and himself entitled to a deed, and a possession after that for twenty years, claiming to own the land, they might presume a deed, and his possession could be considered adverse.    To this part of the charge the defendant excepted.    The judge further charged, that if Jones, in 1826, or about that time, in the interview with Brotherson, admitted that he had no title, but claimed he ought to have a deed from Kissam, that admission, *prima facie*, was a waiver of all claim of adverse possession as against their title.    To which the defendant excepted.    9. The judge further charged the jury that if Jones took a deed from widow Kissam, although he had doubted its validity, and it was in fact invalid, yet if he afterwards thought it conveyed a good title and relied upon it,

his possession might be adverse, if there was no disability in the way, as coverture, tenancy by the curtesy, &c. 10. That if Jones took a deed executed only by widow Kissam, as one of the trustees, and endeavored to obtain, but could not obtain the execution by the other trustees, and knew it was invalid and conveyed no title for that reason, as against the Kissam title, the deed could not be the foundation of an adverse possession. To which the defendant excepted. He further charged the jury that if Jones took a deed from widow Kissam, as one of the trustees under the act of April 8th, 1800, and the deed was invalid because it was not executed by the other trustees, and said deed was given during the coverture of Mrs. Brotherson, or after her husband had become tenant by the curtesy initiate, the effect of that act would not be to allow such a deed to be the foundation of an adverse possession as against Mrs. Brotherson or her heirs during her coverture or the continuance of the particular estate; in other words, if the deed was not valid as aforesaid, the coverture or particular estate, while they continued, would prevent the statute running as against Mrs. Brotherson and her heirs, notwithstanding Jones claimed to own the land under the deed and from the date thereof. To which the defendant excepted. The counsel for the defendant asked the court to charge, as a matter of law, that even if Taylor entered under a contract to purchase, and Jones entered under him as assignee of his contract, and claimed under the same source of title as the plaintiff, before the marriage of Mrs. Brotherson, then such continued claim of title for twenty years would authorize the jury to find that the contract had been complied with and a deed given, without the production of actual proof of payment. The court refused so to charge, but said that after a long lapse of time, say 40 years, such presumption might arise, but not from mere possession and claim for 20 years, without any payment or fulfillment of the contract. To which refusal and decision the defendant excepted. The defendant's counsel further asked the court to charge the jury that if they found that Noah Taylor held and occupied the premises in question under a contract of purchase from Peter R. Kissam,

and had made payments thereon to him, and that Jones entered into possession of said premises as purchaser of Taylor's interest therein, and continued to hold and claim said premises as a purchaser under said contract, and was so permitted to occupy and possess said premises until the death of Mrs. Brotherson, then she had no such possession or seisin in fact as would give her husband an estate by the curtesy, though he had never received a deed. The court refused so to charge, to which the defendant's counsel excepted. The defendant's counsel further requested the court to charge, that such holding of the premises by Taylor and Jones, made the possession in them, and it was not in Mrs. Brotherson, as the heir of Peter R. Kissam, sufficiently to give her a seisin in fact, and her husband an estate by the curtesy, unless she chose to make an entry by evicting the purchaser or compelling him to pay to her instead of the administratrix of Peter R. Kissam. The court refused so to charge, to which the defendant's counsel excepted. He further requested the judge to charge, that such holding of the premises by Taylor and Jones, and making payments on the contract to Peter R. Kissam, or his administratrix, without making payments to Mrs. Brotherson, as his heir, and without the purchaser being evicted during the lifetime of Mrs. Brotherson, was not such a possession in the heirs of Peter R. Kissam as would make a seisin in fact in her, and give her husband an estate by the curtesy. The court refused so to charge, to which the defendant's counsel excepted. The defendant moved for a new trial.

*E. F. Bullard,* for the defendant.

*J. Brotherson,* for the plaintiff.

HAND, J. At the last trial of this cause I supposed that the majority of the court were of opinion that adverse possession of the property intended to be conveyed, would not invalidate the deed given by the father of the plaintiff to her and others ; and with that understanding, so ruled at the circuit, contrary to the opinion I had before entertained. But it seems that some

members of the court acted upon a supposed decision of the court of appeals, which it is now said was made upon quite a different state of facts; and, perhaps, without a majority of that court referring to this point at all. If this be so, the question is still open for our consideration.

We have statutes upon the subject of conveyances, when the property is possessed adversely. "Every grant of lands shall be absolutely void, if at the time of the delivery thereof, such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor." (1 R. S. 739, § 147.) And "if any officer, judicial or ministerial, or other person, shall take any conveyance of any land or tenements, or of any interest or estate therein, from any person not being in possession thereof, while such lands or tenements shall be the subject of controversy by suit in any court, knowing the pendency of such suit, and that the grantor was not in possession of such lands or tenements," it is a misdemeanor. (2 R. S. 691, § 5.) And so it is for any person "to buy or sell, or in any manner procure, or make or take any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof, or the person making such promise or covenant, shall have been in possession, or he or those by whom he claims shall have been in possession of the same, or of the reversion or remainder thereof, or have taken the rents and profits thereof, for the space of one year before such grant, conveyance," &c. (Id. § 6.) These fifth and sixth sections are penal, and are a revision of the former statute. (1 R. L. 172, 3, §§ 1, 2, 8.) The English statutes are also penal. (3 Ed. 1, c. 25, c. 28; 13 Ed. 1, c. 49; 28 Ed. 1, st. 3, c. 11; 33 Ed. 1, st. 2, 3; 1 Ed. 3, pt. 2, c. 14; 20 Ed. 3, c. 4; 1 R. 2, c. 4, c. 7, c. 9; 32 Hen. 8, c. 9.) Under these and our own statutes it seems that the validity of a gift, conveyance or assignment within the statutes in relation to champerty, and the liability of a party for maintenance, may depend upon the fact, whether the grantee, &c. had any interest, vested or contingent, legal or equitable, certain or uncertain, in the property attempted to be transferred; or upon the relationship of the parties; as the case may be. (Finch v. Cockaine, Sav. 92. Patridge v.

*Strange, Plowd,* 77 ; *S. C., Dyer,* 74, *b.* *Wickham, q. t.* v. *Concklin,* 8 *John.* 220. *Thallhimer* v. *Brinckerhoff,* 3 *Cowen,* 623. *Gilleland* v. *Failing,* 5 *Den.* 308. *Campbell* v. *Jones,* 4 *Wend.* 306. *Webb* v. *Bindon,* 21 *Id.* 98. *Van Dyck, q. t.* v. *Van Beuren,* 1 *John.* 344. *Berrien* v. *McLane, Hoff.* 421.) And, perhaps, a poor man may be assisted. (*Perine* v. *Dunn,* 3 *John. Ch. R.* 518. *Lord Abinger, in Findon* v. *Parker,* 11 *M. & W.* 682.) One of the leading cases on the subject of champerty, is *Finch* v. *Cockaine,* (*supra.*) That was an information under the statute, decided in the time of Elizabeth. The father gave a lease to his son and heir apparent, for the purpose of bringing an ejectment, and it was held not to be within the statute. Many of the adjudged cases were of the same kind. And in this case, under these decisions, it is probable, neither the plaintiff nor Philip Brotherson violated any penal statute. But none of these cases hold that the instrument was operative as a transfer, in those cases. The common law declared void, as to the party in possession, a conveyance made when the land was held adversely to the parties to it, and also most contracts in relation thereto. (*Livingston* v. *Proseus,* 2 *Hill,* 526. *Burt* v. *Place,* 6 *Cowen,* 431. *Litt.* § 347. 4 *Kent,* 446. *Co. Litt.* 214, *a.* 2 *Hill. Abr.* 316. *Williams* v. *Jackson,* 5 *John.* 489. *Doe* v. *Evans,* 1 *C. B.* 717. *Underwood* v. *Lord Courtoun,* 2 *Sch. & Lef.* 65. And see *Teele* v. *Fonda,* 7 *John.* 251; *Jackson* v. *Ketchum,* 8 *Id.* 479 ; *Hoyt* v. *Thompson,* 3 *Sandf. R.* 416; *Best* v. *Strong,* 2 *Wend.* 319 ; *Thalimer* v. *Brinkerhoff,* 20 *John. Rep.* 396 ; *Shep. Touch.* 240 ; *Harrington* v. *Long,* 2 *My. & K.* 590 ; *Byrne* v *True,* 2 *Moll.* 157 ; *Ward* v. *Van Bokkelen,* 2 *Paige,* 289 ; 2 *Stor. Eq.* 1048, *et seq. ;* 1 *Hawk. c.* 83 ; *Ros. Cr. Ev.* 667 ; 1 *Russ. on Cr.* 176, *et seq. ;* 15 *Ves.* 139 ; 3 *Id.* 494, *Am. notes ; Chartier* v. *Knapp, MSS.* 4*th Dist. ; Porter* v. *Perkins,* 5 *Mass. R.* 233 ; *Warren* v. *Child,* 11 *Id.* 222 ; *Mayo* v. *Sibly,* 12 *Id.* 343.) The life estate of a tenant by the curtesy clearly then cannot be conveyed to a stranger. But suppose it is to be considered, in this respect, the same as any other life estate carved out of a fee ; the remainder being in the plaintiff ; I do not see how this

Vrooman v. Shepherd.

conveyance can be sustained. A surrender, which is the falling of a lesser estate into a greater, may be by any form of words by which the intention of the parties is manifested. But the surrenderer must be in possession. A right cannot be surrendered. (*Co. Litt.* 338, *a.* 4 *Cruise*, 157. 2 *Bl.* 326. 20 *Vin.* 121, 126. 1 *Saund.* 236, *a*, *n. g.*) Therefore if lessee for life or years be ousted of the land by a stranger, and after ouster, and before his entry, surrenders to his lessor, it is not a good surrender, for he has but a right at the time of the surrender. (*Id. Perk.* § 600.) Nothing in action, entry or re-entry, can be granted over. (*Co. Litt.* 214, *a.*) If we consider this in the nature of a release, we are met with the same difficulty.. A release must be to one in possession. (4 *Crui.* 143, 144. 18 *Vin.* 298. *Litt.* §§ 447, 449, 451. *Co. Litt.* 266 *b*, 267 *a*, 268 *a*. 2 *Bl.* 324. *Lampet's case*, 8 *Rep.* 48 *a.*) Littleton puts a case of a release by the lord to a tenant disseised, by which the seigniory becomes extinct. (§§ 454, 479.) But this is but a mere extinguishment. The reversion is not conveyed. When it is said a release must be to one in possession, it is true, actual possession is not always intended. The release from a stranger that hath a right, may be to the tenant of a freehold, in deed or in law, or to him in remainder; or in the reversion. (*Litt.* § 450. 4 *Crui.* 151.) Seisin in deed, is actual seisin or possession; and seisin in law, when, after descent, the person on whom the lands descend, has not actually entered, and the possession continued vacant. In cases of lands of inheritance, the tenant of the freehold in possession, and the persons in remainder or reversion are equally *in* the seisin in fee; the tenant in possession is said to have the actual seisin, and the fee is intrusted to him. Any act of a stranger, which disturbs his estate, is a disturbance of the fee. (*Butler's note to Co. Litt.* 266 *b.*) The tenant of the freehold in fact or in law may take by release. (10 *Rep.* 48 *a.*) And as we have seen, the lord may release a right to the tenant though disseised, as rent, &c. Indeed the cases mentioned in *Lampet's case*, (*Id.*) are put as releases to the terretenant for his repose and quiet, and to avoid contentions and suits. A right to immediate possession is not

necessary, for estates in remainder and reversion may be granted by lease and release; but they must be actually vested; and then, if the terretenant is in under the same title, he of the reversion is also *in.* (*And see Litt.* § 450.) Therefore, in case of a lease for years, remainder for life, a release by the lessor to the lessee for years and his heirs is good, and also to him in remainder for life and his heirs, to enlarge the estate. (*Co. Litt.* 273 *a.* 18 *Vin.* 296.) But there must be immediate relation and notorious possession. (*Gilb. on Ten.* 66.) For it is different if the estate has been assigned. (*Id.*) I am aware the reporter states that it was decided in *Anson* v. *Lee,* (4 *Sim.* 364,) that when B., claiming to be tenant in tail, with remainder to C. in fee, of lands in the adverse possession of D., conveyed by lease or release, all his interest to C., this conveyance was not within the statute of 32 Hen. 8, c. 9. The bill was against the devisee of the first tenant in tail male; by the remainderman in tail male and remainderman in fee, to have their rights declared in certain estates to which they claimed to be equitably entitled, &c.; the devisee having taken possession. It was objected that the plaintiff, tenant in tail, had released to the remainderman in fee, while the defendant held adversely; and the vice-chancellor held that the objection was unfounded, stating he did not see any reason why the tenant in tail should not have released such right or interest as he had in the estates. If this dictum be law, it does not overrule the general principle. It made little difference to the defendant which of the plaintiffs was entitled to the property, if not his. The plaintiff, tenant in tail, had died without issue before the hearing; and besides, it was a matter of equitable jurisdiction. (*And see* 2 *Stor. Eq.* 1050, *and note.*) And even in that case, the eminent counsel who appeared for the plaintiffs, thought proper to join the grantor or releasor as co-plaintiff. Indeed, it seems a release may sometimes be operative, though one has not such right, title or estate, as would entitle him to immediate possession, there being no disseisin. As a devise for term of years, to A. for life, remainder to B., B.'s release to A. operates to extinguish his interest. And so, perhaps, of equitable interests,

Vrooman *v.* Shepherd.

where there is no maintenance, or where the estate has not yet vested. (*And see Doe* v. *Walker*, 5 *B. & C.* 111, *Bayley, J.*) But where the lessee for life is disseised, the rule in relation to surrender prevails; and his conveyance clearly is void as a surrender; and cannot operate as a release, for the tenant for life cannot release to him in reversion. (18 *Vin.* 307, *I.* 16.) And, *a fortiori*, not when the property is held adversely, both to the releasor and releasee. And certainly this rule should hold in case of a tenant by the curtesy, who, unlike a widow before dower is assigned, is a tenant for life by operation of law, and can reduce the estate to immediate possession. (*And see Co. Litt.* 273 *a; Clan. on Rights Mar. Wom.* 184.) The defendant may inquire into the validity of this deed; not only because the plaintiff must make out a present right to possession, but because, if the deed be valid, this particular estate is merged and gone; and the liability of the defendant is thereby turned over to another, who could not otherwise have sued him.

If these views are correct, of course there must be a new trial; for the jury might have found there was an adverse possession at the time the deed was given; and that P. B. was tenant by the curtesy.

The defendant further insists that if Taylor and Jones had entered upon and occupied the land under a contract to purchase made with P. R. Kissam, and payments mere made, there was no such seisin in fact, as would constitute Philip Brotherson a tenant by the curtesy, and consequently the statute had run against the plaintiff. This proposition is distinct from that in relation to a presumption of a deed in pursuance of the contract, from lapse of time. The question is, whether the possession of a vendee of the ancestor is the possession of the heir. There should have been such seisin, as would have enabled the heirs to inherit before our revised statutes. (4 *Kent*, 30.) But I do not see how a mere possession under the contract to convey could be a disseisin of the vendor, or his heir. In England the vendee is considered a tenant at will; the lowest kind of estate, and which may be determined by demand or entry. (*Doe* v. *Chamberlin*, 5 *M. & W.* 14. 1 *Saund. R.* 276, *n. a*, 6th ed. *Do-*

*little* v. *Eddy*, 7 *Barb.* 74, *and cases there cited.*) Though perhaps only for certain purposes. (1 *Sugd. V. and P.* 377, 276.) Here he has been considered by some judges *quasi* tenant at will, but seems, particularly after default, to have a mere license. ( *Wright* v. *Moore*, 21 *Wend.* 230. *Cooper* v. *Stower*, 9 *John.* 331. *Dolittle* v. *Eddy*, *supra*, *and cases there cited.*) Possession of a tenant for a term of years is a sufficient seisin to support a tenancy by the curtesy. (*De Grey* v. *Richardson*, 3 *Atk.* 469. *Co. Litt.* 15, a. *Clancy's Rights of M. Wom.* 182.) In equity, the interest of the vendor is considered personalty; and that of the vendee realty. (*Seton* v. *Slade*, 7 *Ves.* 274, *and notes. Livingston* v. *Newkirk*, 3 *John. Ch. R.* 312. *Champion* v. *Brown*, 6 *Id.* 398. *Johnson* v. *Corbett*, 11 *Paige*, 265. *Edgerton* v. *Peckham*, *Id.* 352.) And the husband takes an interest as tenant by the curtesy in money directed to be laid out in lands for the wife; he in all other respects being entitled as such. (*Sweetapple* v. *Bindon*, 2 *Vernon*, 536. *Leigh & Dalzell on Eq. Conv.* 62. 4 *Kent*, 30.) But this is an action of ejectment, where the legal title must prevail; and where that is considered in the vendor. (*Seton* v. *Slade*, *supra.*) The aftertaken wife or husband of vendor, it is said, and the heirs, devisees and grantees, with notice, &c. may be compelled to convey. (*Dart on Vend.* 462.) In this case, if there was a valid contract to convey, made in the lifetime of P. R. Kissam, Philip Brotherson and his wife could have been compelled to perform, to the extent of their interest, the vendee being in no default. Till then, the legal title remains. In *Jackson* v. *Johnson*, (5 *Cowen*, 74,) the possession of a vendee was held not to be adverse, until he received a deed. True, in that case the wife was grantee; and perhaps actual entry was not necessary. (*Adair* v. *Lott*, 3 *Hill*, 182.) But that does not affect the question of adverse possession. One in possession of land, under an executory contract, may hold adversely as against strangers. (*La Frombois* v. *Jackson*, 8 *Cowen*, 589. *Mumford* v. *Whitney*, 15 *Wend.* 381. *Clapp* v. *Bromagham*, 9 *Cowen*, 550.) But the possession of the vendee is not adverse to the vendor. (*Jackson* v. *Johnson*, *supra. Briggs* v. *Prosser*, 14 *Wend.*

228. *Jackson* v. *Camp*, 1 *Cowen*, 605. *Whitney* v. *Wright, supra.)* After performance by the vendee, it seems, it may become so. (*Briggs* v. *Prosser, supra.*) But actual payment was not proved in this case. Without regarding any admissions of Jones, and supposing him to have retained the undisturbed possession, and leaving it to lapse of time merely, I think payment, after twenty years, may be presumed. And it seems the possession cannot be deemed adverse, until the vendee has performed, or is presumed to have performed. (*Prosser* v. *Briggs, supra.*) And twenty years, at least, were necessary after it became adverse, to defeat the legal owner. If there is no proof either way, I think in twenty years, a presumption of payment arises. (*Matt. Pres. Ev. ch.* 17. 1 *Greenleaf Ev.* § 37. 2 *Id.* 33, 528. 1 *Cowen & Hill's Notes,* 307. *Jackson* v. *Hotchkiss,* 6 *Cowen,* 403. *Jackson* v. *Sackett,* 7 *Wend.* 94. *Ang. on Limitations,* 80.) Perhaps a shorter period raises the like presumption, when the contract is not under seal. But this seems questionable. (*Id.*) If the court could also presume a conveyance, made simultaneously with the payment, no presumption of adverse possession would be necessary. Perhaps a conveyance could be presumed at the expiration of twenty years, after payment; but I think not at the time payment was made, or is presumed to have been made.

If there was a contract to purchase, and Jones admitted, within twenty years before suit, that a portion of the purchase money yet remained due, there could be no presumption of payment. Indeed, if he entered under a contract, and it was admitted that he had not performed, there was no adverse possession.

If there was an adverse possession, it might be important to ascertain whether it commenced in the lifetime of P. R. Kissam, or during the minority of Mrs. Brotherson; or before his marriage. Cumulative or successive disabilities, would not aid the plaintiff. But if there was a tenancy by the curtesy, the statute would not run against the heirs, during its continuance. If there was a disseisin, and that took place before the death of P. R. Kissam, or before the marriage, there could be no such

tenancy.   And in that case, if the adverse possession has contin-
ued, the plaintiff's right of action, pretty clearly, is barred.

But I think there should be a new trial on the first point.

WILLARD, P. J. and C. L. ALLEN, J. concurred.

CADY, J. dissented.

New trial granted.

[FULTON GENERAL TERM, September 6, 1852.   *Willard, Hand, Cady* and
*C. L. Allen*, Justices.]