### IN THE

# SURROGATES' COURTS

### OF THE

# STATE OF NEW YORK.

---

WESTCHESTER COUNTY.—HON. OWEN T. COFFIN,
SURROGATE.—September, 1886. .

SHUTE *v.* SHUTE.

*In the matter of the judicial settlement of the account
of* PETER SHUTE, *as administrator of the estate of*
GILBERT SHUTE, *deceased.*

The costs included in a judgment recovered against an executor or admin-
istrator, upon a demand against the decedent, are not a preferred claim
against the estate ; but the judgment must be dealt with in its entirety,
and the creditor, in case of a deficiency of assets, receive a just pro-
portion, estimated upon the whole amount for which the same was
rendered.

An executor or administrator will not be allowed credit, upon his account-
ing, for money paid to satisfy a claim against decedent, which was
barred by the statute of limitations at the time of the latter's death.

The first sentence of Code Civ. Pro., § 2793, subd. 5,—which provides that
" out of the remainder of the money " arising from a sale, etc., of a
decedent's real property for the payment of debts, etc., " must be paid
the sum, if any, which has been found to be due to the executor or ad-

ministrator upon a judicial settlement of his account, after applying thereupon the proceeds of the personal property,"—authorizes the payment, out of the money so realized, of a sum so found due, although it represents the costs and charges incurred and paid to claimant's attorney during the progress of the administration.

Smith v. Meakim, 2 *Dem.*, 129, on this point,—disapproved.

The second sentence of the subdivision above cited, qualifying the effect of the portion quoted, is inoperative, since no sum could be "found to be due" to an executor or administrator, upon a judicial settlement of his account, except a balance of expenses of administration which the assets were insufficient to pay.

PENDING a proceeding to sell the real estate of decedent for the payment of his debts, the administrator instituted this proceeding for the settlement of his account. Among other things, Joseph Brush and another, as executors of the will of Israel Peck deceased, presented a claim for the amount of a judgment recovered by them, for a debt of decedent, against the administrator, for about $2,400; in which were included costs of the action, amounting to about $200. The administrator, in his account, credited himself with $100, being the amount of a promissory note for that sum given by the intestate to Mary Shute, bearing date May 20th, 1876.

HERMAN H. SHOOK, *for administrator.*

WALTER S. ALLERTON, *for Sarah Shute and others, next of kin.*

GEO. W. HUNT, *for James H. Shute, next of kin.*

CLOSE & ROBERTSON, *for Joseph Brush and another, creditors.*

THE SURROGATE.—The counsel for the judgment creditors, in the case of Brush and another against the administrator, insist that the costs in that action are a preferred claim and should be paid before any other. This is a matter of moment, in case it should prove

that there are not sufficient assets to pay all claims in full.   Costs were first given where a man recovered damages, *de incremento,* in actions of assumpsit, etc. That is to say, the costs were added to the amount recovered, as an increase, and thus became a part of the judgment debt.   This is so still.   Hence, in this case, the judgment creditor presents here the whole amount of his judgment, as a claim against the deceased as increased by the addition of the costs.   The claim cannot be divided, but must be dealt with in its entirety. The lien for costs, given by statute, to an attorney, is not upon the costs, as such, embraced in the judgment, but upon the client's cause of action or counterclaim. If the judgment creditors had, in this case, applied to the court for leave to issue execution, they would have set forth, as the basis of their claim, the whole amount of the judgment including costs; and if, on an accounting, it had appeared that the assets were insufficient to pay all the debts, the execution would have been issued for the *pro rata* share, applicable to the judgment as a whole.   No distinction could be made as between the amount of the verdict and the costs.   It follows that none can be made here, but that the judgment creditors must have applied upon their judgment a proportional share with the other creditors, with no preference as to any part thereof.

The administrator credits himself with the sum of $100 for money paid to Mary Shute in satisfaction of a promissory note given to her by the intestate, for that amount, dated May 20th, 1876, payable on demand.   The intestate died April 21st, 1883.   The note was, therefore, barred by the statute of limitations at

the time of the intestate's death, in the absence of any proof to the contrary. The administrator testified that, on one occasion, he heard the deceased say he ought to charge Mary, who lived with him, for board, but as there was no proof that he did so charge her, or that the administrator made any claim upon her for any sum on that account, this mere casual remark of the deceased was not sufficient to either keep the statute from running, or to revive the claim, if barred. The administrator paid her the principal of the note only, and there is no evidence that there was any understanding, at the time, that the claim for board was to extinguish the interest, or if there were, there are not facts sufficient to show that the administrator had any power to enter into such an arrangement. He could not thus, or in any way, revive a debt that was already barred in the intestate's lifetime. This item of credit is, therefore, disallowed.

Decree accordingly.

In October, 1886, the following opinion was filed:

THE SURROGATE.—Subsequently to the settlement of the account of the administrator, the matter of the distribution of the proceeds of sale of the real estate of the intestate, for the payment of his debts, came on to be heard. It appeared, on the judicial settlement of the account of the administrator, that there were allowed to him, as credits, certain costs and charges of his attorney, incurred and paid during the progress of the administration, reckoning which, there was

found due to the administrator, on the accounting, about $74, and excluding them there would have been a balance of assets in his hands. Counsel for the contestants contend that the amount of such costs and charges, to the extent of such balance of $74, at least, should not be directed to be paid out of the proceeds of such sale, and cite the case of Smith v. Meakim (2 *Dem.*, 129), as an authority in support of the objection. I am unable to concur in the opinion delivered by the learned Surrogate in that case, to the effect that subd. 5 of § 2793 of the Code "refers only to such claims or debts of the decedent as would authorize this court to order a sale of the real estate for the payment of the same, and not for the payment of any expenses incurred in the administration of the estate." While it is true that, under § 2749, a sale of real estate can only be applied for in order to pay the debts of the decedent and his funeral expenses, it does not follow that the proceeds of such sale are to be used only for such purposes; else, how could any part of them be used for the payment to the widow of a sum in gross, or the surplus be paid to the heirs at law, or how could the executor or administrator be reimbursed a sum found due him on an accounting for expenses of administration which he had paid, when, by paying he exceeded the amount of the assets.

Formerly, where the assets were insufficient to pay in full the expenses of administration and the debts, and the executor or administrator incautiously paid some of the debts in full, he was compelled to lose the excess he had paid, over the proportionate share ascertained to be applicable to all of the debts, where

there was no real estate, and in case, after such accounting and the ascertainment of a deficiency to pay debts, the real estate was sold in order to pay them, there was no statutory provision by which he could be refunded the amount of his loss, even where the proceeds of the sale were abundant for that purpose ; nor, in case his accounting showed that the expenses of his administration exceeded the amount of the assets, and the amount of the difference was found to be due to him, was there any method provided, by which he could recover it. But in 1863, by Session Laws, ch. 400, section 36 of title 4, ch. 6, part 2 of the Revised Statutes was amended by adding thereto the first clause of what is now subd. 5 of § 2793 of the Code. That amendment was comprehensive, authorizing the payment of *any sum found due* to the executor or administrator on the accounting. The proper expenses of administration always enter into the account and affect the result. Hence, it seems clear that he is now entitled out of the proceeds of the sale, to be paid the sum found due him upon the accounting, whatever items were taken into consideration in fixing it, even if the account contained no item of a debt or part of a debt paid by him. The conclusion reached is that a provision must be made in the decree for the payment of the $74, to the administrator.

It may not be out of place to remark that it does not appear, in the report of the case of Smith v. Meakim, that there had been any settlement of the account of the administrator, nor is that any longer necessary, before making an application to sell real estate, under the provisions of § 2750 of the Code, but then it should

be done before the proceeds of the sale are distributed, in order that any balance of assets may be first applied to the payment of the debts.

The last clause of subd. 5 of § 2793 would seem to be superfluous.  It is based upon the idea that an accounting has been had, in which a balance has been found due the executor or administrator, embracing debts which have been paid in full.  As all debts of the fourth class, to which those here considered belong (2 R. S., 87, § 27) stand upon the same footing in regard to priority of payment, the administrator has no right to prefer one to another, and if he pay one in full when the assets, on an accounting, are sufficient to pay one half only, he will necessarily lose the half of the amount so paid.  No such debt or any part of it, would enter into the balance found due to him.  If he had paid one or more debts in full, when the assets were insufficient to pay all, he could be allowed, on those so paid by him, only such *pro rata* share with the other creditors, as the assets would pay, and the decree would so direct, but would not decree anything to be due to him by reason of such overpayment.  The matter is thus disposed of on the accounting, and therefore, the clause seems to be inoperative. It is not apparent, in view of these considerations, that any sum can be found due an administrator or executor, on a final accounting except for the balance of expenses of administration which the assets are insufficient to pay.  That contingency is fully provided for by the act of 1863, which appears to be applicable to such a case only.  Had the amendment to that act, as embodied in the Code, been made to read : " And

this subdivision authorizes the repayment, to an executor or administrator, of any sum paid by him to a creditor of the decedent in excess of the *pro rata* share as fixed by such settlement, not exceeding the proportion which that creditor would be entitled to receive upon the distribution of the proceeds of property disposed of as prescribed in this title," it would have been more practical and in accordance with justice. The amount of the assets so misapplied by the executor or administrator could thus be wholly recovered without injury to any one, unless the proceeds of the sale of the real estate were insufficient to pay all in full, and then he would lose only his share of the deficiency.

Assuming that the amendment referred to is ineffectual for the purpose designed, the executor or administrator, before its adoption, had his remedy against the real estate, which is still unimpaired (Johnson v. Corbett, 11 *Paige*, 265–277).